BASIL WHITE *v.* STATE OF INDIANA.

[No. 1274S240.  Filed June 24, 1976.]

*C. Thomas Billings*, of Greenfield, for appellant.

*Theodore L. Sendak*, Attorney General, *Robert S. Spear*, Deputy Attorney General, for appellee.

DeBruler, J.—Appellant, Basil White, was indicted for first degree murder. After a trial by jury, he was found guilty of second degree murder, Ind. Code § 35-1-54-1, and sentenced to a term of fifteen to twenty-five years.

He appeals on two interrelated grounds: (1) that the State did not produce sufficient evidence of probative value to rebut appellant's claim of self-defense, and (2) that the State did not prove beyond a reasonable doubt all the necessary elements of second degree murder and that, therefore, the verdict was contrary to law.

The facts which support the verdict of the jury show that, on January 2, 1974, in the B & R Tavern in Indianapolis, Jeffrey Walls had a fight with William Kolbaba. After the bartender warned them to quit, Walls' girlfriend scratched Kolbaba and hit him, and he slapped her across the face. At that point, the bartender asked the three to leave.

Walls and his girlfriend went to another tavern, the Cardinal Tavern, where appellant and John Felts were machine bowling. Walls told them that three men had ganged up on him and showed appellant his severely cut lip. Appellant saw the girl's swollen face. He asked Felts if he wanted to go with them to find the man who struck the girl. Felts agreed, and the three men returned to the B & R Tavern. There, the bartender told appellant the truth about the fight and explained how Walls' girlfriend had provoked the man's response. The three left and went on to the Liberty Tavern, but did not find Kolbaba. Then, they decided to walk to the Toddle House Restaurant.

As they entered, Walls identified Kolbaba. He was the only person in the Toddle House, except the waitress. He had a cup of coffee and his silverware, but was waiting for his

meal. The three separated as they entered, and appellant asked Kolbaba if he had struck his sister. Kolbaba stood up and came around in front of the stool, facing appellant and the door. He said that he had and told appellant the same story as the bartender had told. They argued.

At one point, appellant drew a gun from his belt and pointed it at Kolbaba. Kolbaba asked the waitress to call the police. As she started to the phone, one of the other men with appellant told her not to do that. She walked back to the counter, and appellant was still holding the gun. Then Kolbaba said there was a policeman next door, and appellant put the gun back in his belt, inside his jacket.

Kolbaba said he would fight appellant and the other two outside, if appellant would leave his gun inside. But, he would not, and they did not go outside. The waitress who explained this sequence of events turned her back to work at the stove. She said they argued a bit more, then there was silence, and she heard a shot. She turned around and saw the three men outside running away.

Kolbaba was lying on his back on the floor with his feet to the door. No one found a weapon in his hand, or in his pockets, or in the area. When the police arrested appellant an hour after the occurrence, he gave an alibi, but, at trial, he admitted the homicide. The homicide occurred at 1:30 a.m., January 3, 1974.

A police officer, who had run tests, determined that Kolbaba was a minimum of four feet away when the gun discharged because there was no gunpowder residue on the shirt he was wearing.

Appellant's first argument is that he acted in self-defense. When we review a self-defense claim, we determine if there is any substantial evidence of probative value from which the jury could have determined beyond a reasonable doubt, that appellant did not act in self-defense. Appellant must have acted without fault, been in a place where he had a right to be, and been in real danger of

death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm. The State has the burden of showing that appellant did not meet one of these requirements. And, the jury determines if the State has carried its burden. *King* v. *State,* (1968) 249 Ind. 699, 234 N.E.2d 465, and cases cited therein. In determining apparent danger, for example, the jury must review the circumstances from appellant's point of view, but the jury is not required to credit his testimony.

Appellant's self-defense claim is based on his and Felts' testimony and on inferences from other evidence introduced by the State. He and Felts testified that appellant had first drawn and pointed his gun at Kolbaba because he had reached his hand around toward his back pocket, and they thought he had a weapon. Appellant testified that he said, "We didn't come here for a knifing or a shooting." The men testified that appellant replaced the gun when Kolbaba brought his hand back around in front of him. Appellant testified that Walls had asked him for the gun at that point and said that he would shoot Kolbaba if appellant would not. Appellant said that he replied: "You're crazy," and put the gun away.

Appellant and Felts testified that appellant finally suggested that they leave, and Kolbaba then turned around facing the counter. Appellant held the door open for the two others, and, as he turned to look back toward Kolbaba, he saw Kolbaba coming toward him with his fist with something in it within one and a half feet of appellant's head. Appellant testified that he put his left hand up to block the blow, withdrew a few feet, spun around, drew the gun, cocked it, and pulled the trigger, but not intentionally. He stated also that he hit the door frame with his elbow and that the gun discharged in his hand. At that point, Kolbaba was about three feet away.

In further support of his self-defense claim, appellant cites the testimony of the pathologist who noted that Kolbaba had been shot with a thirty-eight caliber pistol in the chest. The bullet entered at a point thirteen inches below the top of Kolbaba's head, angled downward, transected the spinal chord,

paralyzing Kolbaba immediately from the point of transection down, and became embedded in the muscles of the upper back approximately sixteen inches from the top of his head. The pathologist determined the degree of angulation to be about 10° to 15°.

The pathologist testified that Kolbaba was seventy-four inches tall (6′ 2″), weighed about two hundred forty to two hundred sixty pounds, was muscular and slightly obese. He testified that there was no evidence of gunpowder residue on Kolbaba's skin, so that he would conclude the pistol was more than four inches away when it discharged.

A witness for the State noted that the distance from the counter ledge to the door was ninety and a half inches (7′ 6½″). Appellant testified that he is 6′ or 6′ 1″ and weighed two hundred to two hundred five pounds at that time.

Finally, appellant notes that the waitress who had set out Kolbaba's silverware testified that she did not know if it were on the counter when the shooting was over. A police photograph taken twenty-seven minutes after the homicide, at 1:57 a.m., shows a cup of coffee and Kolbaba's billfold, but no silverware on the counter. Kolbaba's seventy-four inch frame was stretched out on the floor with his feet to the door, in a ninety-one inch space. If he had been near the counter, his head would have struck it or the stools as he fell. Since he was paralyzed, the fact that his feet were near the door means that he walked that far before he was shot. Since the bullet entered at an angle, Kolbaba must have been leaning toward appellant, for the angle of the bullet track could not be achieved naturally otherwise. From his own and Felts' testimony, appellant would have the jury credit the evidence that the three men had decided to leave. By the time the waitress turned around, all three were already outside and running.

In sum, appellant would have us find that the jury was required as a matter of law to find that he acted in self-defense. The inferences he believes the jury must draw from the evi-

dence are that Kolbaba was lunging toward appellant with perhaps the silverware in his fist, ready to strike appellant on the head.

There is force to appellant's interpretation of the evidence. However, the jury legitimately may not have believed appellant's testimony, corroborated in large part by Felts, who had been granted immuntiy, and they may have legitimately made other rational inferences from the evidence. It was within their province as their trier of fact to do so.

From the evidence, the jury could have believed that Kolbaba was shot when he was no threat to appellant. The victim had no weapon, appellant never saw him with a weapon at any time, nor did Kolbaba use a weapon in his fight with Walls earlier in the evening. Appellant had two allies, one of whom was eager to kill Kolbaba; Kolbaba was alone.

From the evidence, the jury could have found also that appellant did not act without fault. He had set out with two other men to find Kolbaba. He was armed with a pistol. He twice heard an explanation of the events leading to Kolbaba's slapping Walls' girlfriend, yet refused to let the matter drop. He drew his pistol and pointed it at Kolbaba. If the waitress is believed, he put it away only because he was afraid of being detected by a policeman. When Kolbaba offered to fight appellant and his two friends, if appellant would disarm himself, he refused to do so.

Therefore, even if the jury believed the evidence of Kolbaba's lunging toward appellant with the intent to strike him, they could have found that appellant was not without fault and that he would have perceived no danger of death or great bodily harm.

With regard to the second issue, we must determine whether the State presented substantial evidence of probative value from which the jury could find, beyond a reasonable doubt, that appellant killed Kolbaba with malice and purpose. It is undisputed that appellant shot Kolbaba and that he died from that wound.

As to purpose and malice, this Court, like courts in other jurisdictions, has held repeatedly that the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm permits an inference that the defendant was acting with malice and purpose. *Cambron* v. *State*, (1975) 262 Ind. 660, 322 N.E.2d 712; *Taylor* v. *State*, (1973) 260 Ind. 264, 295 N.E.2d 600, *cert. denied* 414 U.S. 1012; *Livingston* v. *State*, (1972) 257 Ind. 620, 277 N.E.2d 363; *Maxwell* v. *State*, (1970) 254 Ind. 490, 260 N.E.2d 787, *cert. denied* 402 U.S. 930; *Jones* v. *State*, (1970) 253 Ind. 456, 255 N.E.2d 105; *Williams* v. *State*, (1969) 252 Ind. 154, 246 N.E.2d 762.

Such an inference is certainly reasonable where a defendant points a gun at another purposely and pulls the trigger. But a defendant may introduce evidence to rebut that inference. He may show that he did not point the gun at a vital part of the victim's body, that he acted in self-defense, that he responded in the heat of passion induced by sufficient provocation. There is no presumption of malice, but merely a permissible inference from the fact of using a gun in a way likely to cause death.

Here the State showed that appellant shot the victim in the chest. The State also introduced evidence of appellant's hunting for the victim, arming himself, intending to confront the victim with the victim's earlier mistreatment of a woman, bringing two men with him to confront the victim even after he knew the victim had acted alone, drawing and aiming his gun at the victim a few minutes before the fatal shot, acquiescing in his friend's warning to the waitress not to call the police, and refusing to disarm. Appellant introduced evidence that he retreated a foot and a half, drew his gun, cocked it, pointed it, and that it went off in his hand. There was no evidence of provocation. The jury could have found that appellant did not act in self-defense.

With this evidence, we cannot find that the jury erred in finding that appellant killed Kolbaba with malice and purpose.

The conviction is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 349 N.E.2d 156.