LARRY LEE LINDLEY *v.* STATE OF INDIANA.

[No. 1276S464. Filed March 22, 1978. Rehearing denied June 13, 1978.]

84

*Paul J. Giorgi Professional Corp.*, of Merrillville, for appellant.

*Theodore L. Sendak*, Attorney General, *J. Roland Duvall*, Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was charged with murder in the first degree. He was convicted by a jury of second degree murder and sentenced to 15 to 25 years.

The evidence most favorable to the State reveals that on the evening of November 5, 1975, appellant and two friends, Donald Birlson and Bob Rukavina, were driving around and drinking beer in appellant's car. Shortly after midnight while driving on U.S. Highway 30, they approached the intersection with U.S. Highway 41, where a blue car pulled out in front of them. Appellant flicked his bright lights and passed the car. He then noticed the blue car had pulled over and he decided to stop to "see what was going on." The driver of the blue car, Michael Pavlik, got out and walked to appellant's car. Words were exchanged and appellant grabbed a knife and emerged from the car. He was seen grabbing and punching the victim and then swung upward at him three or four times. Appellant's two companions got out of the car to help him and joined in the fight. After the victim fell to the ground the three got back into the car and drove off. Blood was observed on appellant's fingers and when one companion asked whether appellant had cut his finger with a knife, appellant replied, "Yes, that could have happened."

Appellant was then asked how he could have used a knife on a person when there were three of them together. Appellant replied, "Well, he deserved it because I'm smaller than him." Appellant later discarded a knife sheath, saying he needed it no longer.

Appellant first claims error in the failure of the juvenile court to waive jurisdiction to the criminal court. On November 6, 1975, the day of the crime, the juvenile division of the Lake Superior Court instituted proceedings against appellant. On November 10, 1975, a petition for delinquency was filed alleging that appellant had committed second degree murder. Four days later the State filed a motion for waiver of the case to criminal court. On November 25, 1975, while the waiver motion was still pending in the juvenile court, the grand jury returned an indictment against appellant for first degree murder. Because of this indictment the juvenile court dismissed the petition for delinquency. Appellant claims it is

reversible error for the juvenile court to have dismissed the delinquency petition without conducting a waiver hearing.

Some of the statutes which are applicable here were effective in this State for only seven months. In 1975 the General Assembly amended the juvenile procedure statute by enacting PL 296, Acts 1975, which became effective on July 29, 1975. The crime occurred on November 6, 1975. The legislature once again revised the statute to its present form on February 25, 1976.

In cases of statutory interpretation this Court must give consideration to the consistency of all sections and to the logical meaning of the language. A statute which is specific and unambiguous must be held to its plain meaning. *State ex rel. VanNatta* v. *Marlett*, (1977) 266 Ind. 563, 365 N.E.2d 763.

The juvenile courts of this State have "original exclusive jurisdiction, except after jurisdiction of the child is waived in all cases in which a child is alleged to be delinquent, dependent or neglected. . . ." IC 33-12-2-3 [Burns 1973]. Section 3 of PL 296 redefined "child" to exclude persons charged with first degree murder. Section 5 required all other courts to transfer criminal cases against persons under 18 years of age to the juvenile court, except where the offense charged is first degree murder. This exclusion has been retained in the present statute. IC 31-5-7-13 [Burns Supp. 1977].

Appellant argues that Section 4 of PL 296 should control. That section states that "delinquent child" includes any person under 18 years who commits an act which, if committed by an adult, would be a crime, except murder. He then argues that "murder" here means only first degree murder and that the facts and ultimate outcome show that he committed only second degree murder. He therefore claims he should have been within the definition of delinquent child and a waiver hearing should have been held. However the plain language of Sections 3 and 5 of PL 296 is to the contrary. Furthermore, this Court in *State ex rel.*

*Imel* v. *Municipal Court,* (1946) 225 Ind. 23, 72 N.E.2d 357, held that it is the charge that is controlling, not the final determination of guilt or innocence; and where defendant is charged with first degree murder or is otherwise within a statutory exception, the juvenile court has no jurisdiction and a municipal court is under no duty to transfer the case to the juvenile court. Jurisdiction under such circumstances is not placed in the juvenile court, but in criminal court. *Jones* v. *State,* (1977) 266 Ind. 349, 363 N.E.2d 959; *Lockridge* v. *State,* (1975) 263 Ind. 678, 338 N.E.2d 275. The case at bar is within the statutory exception of a charge of first degree murder. When the indictment for first degree murder was returned by the grand jury, jurisdiction over the matter immediately vested in the criminal division of the Lake Superior Court. At the same time the juvenile division was immediately divested of jurisdiction. The juvenile court subsequently did the only thing which by law it could do—it dismissed the petition for delinquency. We therefore hold there was no error in the failure to hold a waiver hearing.

Appellant next contends the trial court erred in granting the State's motion in limine. Prior to trial the State filed the motion asking that defense counsel and any defense witness be prohibited from commenting upon "any specific bad acts" of the State's witnesses, particularly witness Donald Birlson. The trial court granted the motion. Defense counsel made an offer to prove stating that the evidence would show that the decedent Pavlik and Birlson had gotten into a fight over a young lady and that Pavlik had some help in beating up Birlson. Appellant contends this evidence would impeach the credibility of Birlson's testimony and would show that Birlson had a motive for killing Pavlik.

Appellant relies primarily on *Davis* v. *Alaska,* (1974) 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, which involved a witness on juvenile probation who identified the defendants as the persons he had seen prying open a stolen safe near his home. The court held that defense counsel should have

been permitted to explore the witness' juvenile record to reveal any improper influences which might have caused the witness to have a faulty identification. The facts in the case at bar however are vastly different. Here there were no identification problems, as Birlson and appellant were well acquainted with one another. Thus the *Davis* case cannot be said to apply.

The bias and ulterior motives of a witness may be revealed on cross-examination so long as there is a reasonable degree of probability that the witness is biased or prejudiced. *Clark* v. *State*, (1976) 264 Ind. 524, 348 N.E. 2d 27. In *Ringham* v. *State*, (1974) 261 Ind. 628, 308 N.E.2d 863, this Court upheld a decision of the trial court in not permitting the defense to specifically question a witness as to her motives for wanting to kill the decedent. There we stated:

> "There is nothing in the case to indicate that Bertha Jeffers was involved in the killing of her former husband nor was there any indication whatever that she had an ulterior motive to testify in a manner detrimental to the appellant. Specific evidence of the deceased's misconduct toward the witness, Bertha Jeffers, was in no way pertinent to the evidence elicited from her concerning the incident resulting in the deceased's death." 261 Ind. at 630, 308 N.E.2d at 865.

In the case at bar there is no showing that Birlson was in any way biased against the appellant because of his prior fight with the decedent. The fight is irrelevant to Birlson's testimony regarding the incident which resulted in Pavlik's death. Thus it was not an abuse of discretion for the trial court to limit the scope of this cross-examination by excluding the evidence of Birlson's fight with the decedent. *Ringham* v. *State, supra.*

Appellant next claims he should have been acquitted because he acted in self-defense. To prevail in a claim of self-defense appellant must have acted without fault, been in a place where he had a right to be and in good faith believed himself to be in real

danger of death or great bodily harm. *White* v. *State,* (1976) 265 Ind. 32, 349 N.E.2d 156; *King* v. *State,* (1968) 249 Ind. 699, 234 N.E.2d 465. Appellant claims that he was without fault and was in a place where he had a right to be in that he was "sitting quietly in his own automobile when the victim approached him in an angry manner." The evidence shows that appellant flicked his bright lights on the victim's car and passed it. Instead of continuing on his way, appellant noticed the victim had pulled off the road. He also stopped to see what was going on. With a confrontation between the two imminent, appellant gave the victim an opportunity to approach his car. The victim asked him, "Do you want to make something out of this, shining your bright lights on me?" to which appellant replied, "Yeh, I'll make something out of it." Appellant immediately grabbed his knife and emerged from the car. He was then seen grabbing and punching the victim and swung upward at him three or four times.

Appellant also claims he had reasonable grounds for believing he was in real danger of death or great bodily harm. However the evidence indicates that appellant replied to the comment of the decedent in an aggressive manner, grabbed his knife and did not hesitate to strike the victim once outside the car. From the evidence in this case, the jury could infer that appellant was not in fear of death or great bodily harm when he attacked the victim. There is sufficient evidence of probative value to support the finding of the jury that the appellant did not act in self-defense.

Finally appellant urges reversal on the ground that there is insufficient evidence of malice and purpose. It is the prerogative of the jury to weigh evidence and determine the credibility of witnesses. So long as there is substantial evidence of probative value from which the jury could have inferred guilt beyond a reasonable doubt the verdict and judgment will be affirmed. *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686. The elements of malice

and purpose may be inferred from the circumstances, the use of a deadly weapon or the act of killing a human being. *Dozier v. State,* (1976) 264 Ind. 329, 343 N.E.2d 783; *Chatman v. State,* (1975) 263 Ind. 531, 334 N.E.2d 673. The facts in this case are more than sufficient to support an inference that appellant maliciously and purposely killed the decedent.

The judgment of the trial court is in all things affirmed.

Hunter and Pivarnik, JJ., concur; DeBruler, J., dissents with opinion in which Prentice, J., concurs.

### DISSENTING OPINION

DEBRULER, J.—I cannot agree with the majority's suggestion that *Davis* v. *Alaska,* (1974) 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, applies only to cross-examination as to "improper influences which might have caused the witness to have a faulty identification." This insight into *Davis* seems to have escaped every other court considering that case. *See e.g. United States* v. *Garrett,* (6th Cir. 1976) 542 F.2d 23; *Salazar* v. *State,* (Alaska 1976) 559 P.2d 66; *Commonwealth* v. *Johnson,* (1974) 365 Mass. 534, 313 N.E.2d 571; *State* v. *DeLawder,* (1975) 28 Md. App. 212, 344 A.2d 446; *State* v. *Hemb,* (1975) 305 Minn. 120, 232 N.W.2d 872; *State* v. *Hilling,* (N.D. 1974) 219 N.W.2d 164; *State* v. *Jalo,* (Or. App. 1976) 557 P.2d 1359.

Appellant wished to impeach Birlson by showing that Birlson had a motive to kill the decedent. The tendency of the existence of such a motive to cast suspicion of the murder on Birlson provides Birlson with an ulterior motive to incriminate appellant. This is very similar to impeachment attempted in *Davis*: Davis wished to show that the juvenile probationer, because of his status, had an ulterior motive for testifying against Davis. I would hold that there is no necessity to reach the constitutional issue, however, because the trial court erred as a matter of Indiana law in precluding appellant from showing Birlson's motive for falsely accusing appellant.

"Credibility of a witness may be attacked by showing that he may have an ulterior motive or may be under compulsion to testify." *Hall* v. *State,* (1978) 267 Ind. 512, 371 N.E.2d 700, 701.

The point is not that Birlson is "biased against appellant because of his prior fight with the decedent." Evidence of this fight is relevant to show Birlson's ill will toward *the decedent.* Such evidence, in conjunction with Birlson's opportunity to kill the decedent in the fatal altercation, placed Birlson in a position in which it behooved him to divert suspicion from himself by accusing appellant. While this impeachment might not have convinced the jury to disbelieve Birlson, it was relevant to their evaluation of Birlson's credibility, was impeachment of recognized propriety, and should have been admitted.

Prentice, J., concurs.

NOTE.—Reported at 373 N.E.2d 886.