**Milton ABBOTT, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 380S60.

Supreme Court of Indiana.

Mar. 9, 1981.

Gregory D. Ball, Public Defender, Richmond, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant Abbott appeals here from a conviction following a trial by jury of attempted murder, a class A felony under Ind. Code § 35–45–1–1, and Ind. Code § 35–42–1–1(1), in the shooting and critical

wounding of one Billy Joe Daugherty. He received a sentence of thirty years.

The claims made on appeal are:

(1) the trial court erred in giving Final Instruction No. 4 regarding sudden heat and attempted voluntary manslaughter;

(2) the trial court erred in not declaring a mistrial because of questioning by the prosecutor regarding a prior shooting; and

(3) whether the evidence was sufficient to negate self-defense.

### I.

■ The court's Instruction No. 4 read in pertinent part as follows:

"Attempted Voluntary Manslaughter has the same elements as Attempted Murder, or in other words, as charged in this case, the 'knowing' or 'intentional' attempted killing of a human being, except that in the case of Attempted Voluntary Manslaughter, the 'knowing' or 'intentional' attempted killing is accomplished in a sudden heat. The element of sudden heat, if the sudden heat is established, therefore, reduces Attempted Murder to Attempted Voluntary Manslaughter."

The instruction also contains an explanation of sudden heat. Trial counsel objected to the instruction on the basis that there is no such crime as attempted voluntary manslaughter in Indiana.

An attempt is defined in Ind. Code § 35–41–5–1:

"(a) A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit murder is a class A felony."

Indiana Code § 35–42–1–3(a) defines voluntary manslaughter as follows:

"(a) A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a class B felony."

Pursuant to this definition and the common law since the days of Blackstone, manslaughter like murder involves an intentional killing of another human being. At common law the punishment for murder required a retaliatory letting of blood. But when the murder occurred during a fight or other circumstance involving the heat of passion induced by a sufficient provocation the punishment of banishment was deemed sufficient. In *McDonald v. State*, (1976) 264 Ind. 477, 346 N.E.2d 569, we held:

"[I]f sufficient evidence is presented to the jury by which it could find murder in the first or second degree, the jury may also return a verdict of guilty of voluntary manslaughter, notwithstanding the absence of proof of 'sudden heat'." 264 Ind. at 483, 346 N.E.2d 569.

This understanding of the nature of manslaughter is carried forward in subsection (b) of Ind. Code § 35–42–1–3, wherein it is stated:

"The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder ... to voluntary manslaughter."

Thus since the intentional element is present in a voluntary manslaughter as in the case of murder, although modified in nature by the presence also of sudden heat, the attempt statute is applicable to voluntary manslaughter upon the same basis that it is applicable to murder itself. There is therefore in Indiana a crime of attempted voluntary manslaughter and the objection to the instruction was not well-founded.

■ Appellant also contends that it was error to give this instruction because there was no evidence of sudden heat to warrant it. In *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770, we stated:

"It is error to give an instruction upon an issue if there is no evidence to support it." 258 Ind. 698, 284 N.E.2d 770.

The evidence presented showed that appellant and Daugherty argued and fought in a pool room, and that Daugherty wrestled a pool cue from appellant's grip and in the immediate aftermath of this appellant shot

Daugherty from a distance of ten to twelve feet as Daugherty was in the process of returning the cue to the wall and retaking his seat at a table. This was evidence warranting the inference that appellant was acting in anger and frustration as a result of his humiliation before others in the pool room at the hands of Daugherty. There was no error in giving the instruction.

## II.

▮ The deputy prosecutor at trial brought out on cross-examination of appellant that he had shot a man in 1974. That shooting had not resulted in any conviction. The challenged cross-examination proceeded as follows:

"Q. Ever have to use that gun?

A. Yes sir.

Q. When?

A. I don't know, four or five years ago.

Q. Who did you use the gun on?

A. Ronnie Reed.

Q. You shoot him?

A. Yes sir.

Q. Shoot him in the back two times?

A. No sir.

Q. What did you do with the gun after you shot him?

A. Threw it away.

Q. Threw it away?

A. Yes sir.

Q. Was that in 1974?

A. Guess so.

Q. Anybody see you shoot Ronnie Reed?

A. Yes sir.

Q. Who saw you shoot him?

A. Peggy —."

In *Hensley v. State*, (1971) 256 Ind. 258, 268 N.E.2d 90, we said:

"When the defendant takes the witness stand, the State may cross-examine him concerning his credibility. However, in so doing the State is not permitted to inquire into specific acts of misconduct other than prior convictions." 256 Ind. at 260–61, 268 N.E.2d 90.

This prohibition does not prevent the State from presenting competent and relevant evidence tending to prove or disprove a fact in issue even though it may tend to show guilt of another crime, *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843, and the subject matter in the above cross-examination falls in this latter category.

Appellant testified on direct examination that he had the pistol with which he shot Daugherty on his person to "take care" of his business which he operated in the same neighborhood. Further he stated that Daugherty attacked him and struck him in the head with the pool cue, and that in a dazed, half drunken, and fearful state he turned around towards the spot where Daugherty was standing and fired off several shots, not knowing how many, in that general direction, never aiming at Daugherty or intending to shoot and kill him, but only to defend his life, which he deemed to be in great danger. This testimony tended to portray appellant as a naive businessman having a good reason for carrying a handgun and having a very limited ability to use it in a skilled and calculated manner. By it he sought to have the jury infer that he acted in panic in an uncontrollable fear or confusion rather than in a deliberate, calculated and intentional manner in shooting Daugherty. The testimony elicited on cross-examination tended to show that he had fired the gun on a former occasion, striking another human being, and was therefore experienced in the handling of the gun and in its use against others, and that he was fully capable of using it against Daugherty in a conscious and deliberate manner to hit and wound or kill him. The subject was relevant on the issue of intent as it was being litigated in this case, and was not improper.

## III.

▮ Appellant asserts that the evidence was insufficient to negate the defense of self-defense. In *White v. State*, (1976) 265 Ind. 32, 349 N.E.2d 156, in considering the claim of self-defense upon appeal we stated:

"When we review a self-defense claim, we determine if there is any substantial evidence of probative value from which the jury could have determined beyond a reasonable doubt, that appellant did not act in self-defense. Appellant must have acted without fault, been in a place where he had a right to be, and been in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm. The State has the burden of showing that appellant did not meet one of these requirements." 265 Ind. 34–35, 349 N.E.2d 156.

Customers present in the tavern and pool room where the shooting took place presented testimony from which the jury could have concluded beyond a reasonable doubt that at the time appellant drew his gun and shot Daugherty he was not in real danger of death or great bodily harm or in apparent danger which would cause him in good faith to fear death or great bodily harm. Appellant asked Daugherty to pay him back for a debt owed. Daugherty refused. Appellant threatened Daugherty's family. Daugherty seized the pool cue from appellant after a brief struggle and a heated verbal exchange. Appellant was not struck with the cue or injured in any fashion. Daugherty did not verbally threaten to kill appellant. Daugherty returned the cue to the wall and returned to his seat at a table. Appellant, at a distance of twelve feet, while moving away from Daugherty and the point where they had struggled, drew his gun, turned and shot five times at Daugherty, severely wounding him. Daugherty was not armed. This testimony if believed was sufficient to negate self-defense.

The judgment is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.