**James R. GOODWIN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 981S241.**

Supreme Court of Indiana.

Sept. 7, 1982.

David M. Shaw, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Defendant-appellant, James R. Goodwin, was adjudged guilty of criminal recklessness, Ind. Code § 35–42–2–2, for which he received a sentence of two years; attempted manslaughter, Ind. Code § 35–41–5–1 and § 35–42–1–3, for which he received a sentence of ten years; and of being an habitual offender resulting in an augmentation of sentence of thirty years. This direct appeal raises the following issues:

I. Whether the instruction defining criminal recklessness was erroneous.

II. Whether the evidence was sufficient.

III. Whether it was error to refuse a defense instruction on self-defense.

IV. Whether the court erred in giving the State's instruction on self-defense.

V. Whether newly discovered evidence mandates a new trial.

VI. Whether it was error to deny a defense motion for appointment of an expert witness.

VII. Whether the court erred in refusing to instruct the jury on the penal consequences resulting from a verdict of habitual offender.

VIII. Whether the evidence of prior conviction was sufficient to support the habitual offender determination.

IX. Whether the court erred in denying a motion for mistrial.

### I.

In instructing the jury on the lesser and included offenses within the charge of battery upon one Randy Wydicks, the court gave the following instruction defining criminal recklessness:

"The Court instructs you that the offense charged in the Information for Count I also includes the offense of Criminal Recklessness, which the statute of our State defines, as follows:

'(a) A person who recklessly, knowingly or intentionally attempts to perform an act that creates a substantial risk of bodily injury to another person commits attempted criminal recklessness, a Class B misdemeanor. However, the offense is a Class A misdemeanor if the conduct includes the use of a ... deadly weapon.

(b) A person who recklessly, knowingly or intentionally attempts to inflict serious bodily injury on another person commits attempted criminal recklessness, a Class D felony.'"

Objection was made to this instruction upon the basis of its incorporation of the word "attempts". The instruction is clearly incorrect in attributing the definition to the statute. The statute does not use the word "attempt". The general attempt statute, Ind. Code § 35–41–5–1, from which the word derives, does not apply to the class of general intent crimes to which criminal recklessness belongs. *Humes v. State,* (1981) Ind., 426 N.E.2d 379. Since the jury returned a verdict of guilty for the offense described in this erroneous instruction, the conviction on Count I must be reversed.

### II.

The evidence tending to support the verdicts of guilty shows that Steven Vincent was living with Randy and Ellen Wydicks and their two children in an apartment at 1220 Mary in Evansville, Indiana. A group which included Steve Vincent, the Wydicks and appellant had been out drinking and eating in the evening. After their return home, Vincent was sitting on the couch, in his living room when appellant came in the door and started making threats to him. Appellant said he was going to "whip" Vincent and "mess him up." Vincent was unarmed and made no threats to appellant.

Appellant took off his jacket and stepped up to Vincent, whereupon Vincent struck him several times in the face, knocking him to the floor. Randy Wydicks broke up the fight and took Vincent out to the side porch. Ellen Wydicks helped appellant out

to the front porch. Appellant then drew a knife from a sheath on his belt and lunged with it, cutting Wydicks on the arm and stabbing Vincent numerous times, saying that he was going to kill him. Appellant chased Vincent from the porch and stabbed him again. Vincent was taken to the hospital with a laceration in his left forehead which penetrated the skull and exhibited or bulged brain tissue. Vincent also had lacerations near his chestbone, on the back of his shoulder, and in the arm. He was in intensive care for ten days.

 The offense of attempted manslaughter, a class B felony includes the following elements: (1) a knowing or intentional state of mind, (2) conduct constituting a substantial step toward (3) the killing of (4) a human being. *Anthony v. State,* (1980) Ind., 409 N.E.2d 632; *Palmer v. State,* (1981) Ind., 425 N.E.2d 640; *Smith v. State,* (1981) Ind., 422 N.E.2d 1179. Appellant argues that the testimony of the various witnesses for the State was so inconsistent, contradictory and uncertain that no reasonable man could convict upon it. In determining the sufficiency question we cannot weigh the evidence nor resolve questions of credibility, but must look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State,* (1970) 254 Ind. 401, 260 N.E.2d 558. When the evidence presented in this case is viewed in this manner, there emerges a core of consistency, from which a reasonable trier of fact could have concluded the facts to be as recited above, and postulating such facts, it is more than apparent that they as a body have substantial probative value from which a reasonable trier of fact could infer appellant is guilty beyond a reasonable doubt. Appellant thrust a knife repeatedly into an unarmed man saying that he would kill him. The inconsistency between the versions given by the various witnesses was for the jury to deal with.

### III.

 The court refused to give appellant's Tendered Instruction No. 3 which would have informed the jury that the question of whether conditions existed warranting him to act in self-defense was to be resolved from the standpoint of the defendant at the time and under the existing circumstances as shown by the evidence. Assuming it to be a correct statement of the law, it was covered by other instructions which were given, including defendant's Tendered Instruction No. 2 which informed the jury that he need not have been in actual danger of death or great bodily harm but that he had the right to act on the appearance of things at the time. The refusal to give an instruction cannot result in error if the substance thereof is covered by other instructions which are given. *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836.

### IV.

The court gave a State's instruction on the defenses of self-defense, defense of others and defense of property derived from Ind. Code § 35–41–3–2 as follows:

"(a) A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.

(b) A person is justified in using reasonable force, including deadly force, against another person if he reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on his dwelling or curtilage.

 \* \* \* \* \* \*

(d) Notwithstanding subsections (a) (b) and (c) of this section, a person is not justified in using force if:

(1) He is committing, or is escaping after the commission of, a crime;

 \* \* \* \* \* \* ·

(3) He has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action."

Defendant objected to the instruction as follows:

"The defendant objects to the Court's giving to the jury State's Instruction No. 6 in the following particulars: (1) Subsection (b) of the instruction is not applicable to the case for two reasons: Firstly, the issue is not whether Steve Vincent was justified in striking the defendant in the apartment but whether or not the defendant was justified in protecting himself outside of the apartment where the stabbing occurred. Secondly, the rightfulness of Steve Vincent's conduct in the apartment was not an issue in this case."

We take the objection to mean that there was no issue presented for resolution by the jury as to whether appellant was justified in drawing his knife and stabbing Vincent because he believed he needed to do so to protect his dwelling or curtilage, and that therefore there was no legal purpose to be served by subsection (b) of the instruction.

■■■ The claim was raised that appellant acted in self-defense in drawing his knife and stabbing Vincent while the two were outside the apartment on the porch. The burden was therefore upon the State to negate the defense which it could do by proving that appellant had not acted without fault. *White v. State,* (1976) 265 Ind. 32, 349 N.E.2d 156. One of the premises of a successful showing in this regard would include proof that the battery of appellant by Vincent in Vincent's apartment, to which the stabbing was a response, was itself justified. According to the challenged subparagraph (b) of the instruction, a battery may be justified if it is to prevent or terminate a person's unlawful entry of or attack on his dwelling or curtilage. There was evidence presented that appellant appeared at the apartment in an angry mood and threw beer on the floor, and left. Within minutes Vincent returned to the apartment and sat down on the couch. Appellant reappeared and while angry re-entered the apartment and confronted Vincent, cursing and threatening him. He was armed with a sheath knife and a gun. He took the gun off and threw it toward the babysitter. He peeled off his jacket and moved toward Vincent with his arm cocked. A reasonable trier of fact could reasonably infer that at the time of this entry he was angry, conducting himself in a forceful manner, armed, and had the intent to start a fight in the apartment with its occupant. This evidence would support the further inference that his purpose in entering on this occasion was unlawful and constituted an attack upon the dwelling as well as upon its occupant. There is even some evidence that Vincent viewed appellant's conduct as an invasion of his dwelling for in a pre-trial statement in response to questioning about what had occurred he said: "He [appellant] started swinging and *it was my house.*" (Emphasis added.) We find therefore that subparagraph (b) of the instruction was applicable as a guide to the jury in arriving at the intermediate proposition that Vincent, the victim, had been justified in his battery of appellant.

### V.

■■■ Pending trial, the alleged victims Vincent and Wydicks were held in jail on criminal charges. After the trial of appellant, prisoners with whom these two had been held produced affidavits that Vincent and Wydicks had stated to them that Vincent had started the fight, that Wydicks and Vincent had pursued the fight together, and that appellant had drawn his knife in self-defense. Further affidavits showed that Vincent received a favorable plea agreement with the State on a pending theft charge. Affidavits in support of an application for new trial on the ground of newly discovered evidence must contain a statement of facts which must show, among other things, that the new evidence is not merely impeaching and will probably produce a different result if given upon a

retrial of the case. *Emerson v. State,* (1972) 259 Ind. 399, 287 N.E.2d 867. The newly discovered matter here does not meet these tests. The main force of this matter is to impeach the credibility of Vincent and Wydicks. We accord the greatest deference to the decision of the trial court in deciding whether to grant a new trial because of the availability of such evidence. As substantive evidence, the statements attributed to the two are very general and conclusory in nature. The assertions in them contain little that is factual. They therefore do not serve to contradict at a special level. Who can say what is meant by one who says that he started a fight or that two men engaged in fighting a third, or that another drew a knife in self-defense? We agree with the trial court that this evidence would not impact decisively so as to probably produce a different result in a new trial.

## VI.

■ Appellant sought by pre-trial motion for appointment of an expert at public expense. A hearing on the motion consisted solely of the testimony of appellant, that the last thing he remembered on the night of the alleged offense was seeing Vincent coming at him. The next thing he remembers is waking up in the hospital. Following this brief testimony, defense counsel asked for the appointment of a hypnotist or other person to attempt scientific tests or the administration of drugs "or anything else to find out what occurred and to refresh the defendant's recollection." There was no showing here that services were available which would have the beneficial result envisioned by defense counsel. Mere belief in the availability of such services is an insufficient basis upon which to make the order requested. *Himes v. State,* (1980) Ind., 403 N.E.2d 1377; *Roberts v. State,* (1978) 268 Ind. 127, 373 N.E.2d 1103.

## VII.

■ Appellant sought to have the jury instructed regarding the nature of the penalty for habitual offender, and such efforts were rejected in several rulings by the trial court which appellant now claims constituted error. Appellant argues that the jury in rendering a verdict on an habitual offender count engages in a sentencing function and consequently is entitled to know the consequences of its verdict. He likewise argues that the jury should be informed of those same consequences in order to carry out its function under Art. I, § 19, of the Indiana Constitution to determine the law and facts. These contentions have been resolved against appellant, and reconsideration of them has taken place. *Griffin v. State,* (1981) Ind., 415 N.E.2d 60; *Comstock v. State,* (1980) Ind., 406 N.E.2d 1164.

## VIII.

Count III, alleging that appellant is an habitual offender, sets forth three prior felony convictions as follows:

"That the defendant, James Richard Goodwin, was convicted and sentenced on May 19, 1975, in the Vanderburgh Superior Court, Vanderburgh County, Indiana, of a felony, to-wit: Second Degree Burglary.

That the defendant, James Richard Goodwin, was convicted and sentenced on June 14, 1976, in the Vanderburgh County Superior Court, Vanderburgh County, Indiana, of a felony, to-wit: Theft by Deception.

That the defendant, James Richard Goodwin, was convicted and sentenced on October 20, 1977, in the Vanderburgh County Superior Court, Vanderburgh County, Indiana, of a felony, to-wit: Theft under One Hundred Dollars ($100)."

Appellant contends that the evidence was insufficient to prove these allegations.

■ Exhibits introduced in support of the first alleged conviction showed a plea of guilty by James R. Goodwin to second degree burglary in the Vanderburgh Superior Court on April 28, 1975, the acceptance of that plea by the court, the order for presentence investigation, and an order for the defendant to return to court on May 19, 1975. Another exhibit shows that James Richard Goodwin returned to court on May 19, 1975, and the court made the following entry:

"Defendant having heretofore entered plea of guilty [sic] Court having found defendant guilty, now sentences defendant to two (2) to five (5) years. . . ."

Appellant argues that this shows only a conviction on April 28, 1975, and does not show a conviction on May 19, 1975 as alleged.

These exhibits equally tend to support the inference that a judgment of conviction occurred on April 28, 1975, May 19, 1975 or at some point in time between those dates. A judgment of conviction is the mental process of the judge in which he finds that the defendant in a criminal cause is guilty. Here that judgmental act was not made manifest in the court's records until May 19, 1975, the date alleged in the charge. Under these circumstances the evidence is at variance with the allegation, but not materially so, since the evidence shows a conviction occurring within a brief span of time including the date alleged, and the other characteristics identifying this particular instance of conviction are present. That appellant was misled is not evident. *Lewellen v. State,* (1976) 265 Ind. 483, 358 N.E.2d 115.

■ As to the second allegation of a prior conviction for theft by deception, appellant contends that the evidence thereof is insufficient because it shows a conviction for theft under $100 rather than theft by deception. The two referents are subspecies of theft. There is a variance here from the allegation, but it is not a material one, in light of the close relationship between the two, and the presence of other distinguishing characteristics. That appellant was misled in his defense is not evident.

■ As to the third allegation of a prior conviction, appellant contends that the evidence thereof is insufficient because it fails to show that the conviction occurred on October 20, 1977 as alleged. Exhibits introduced for the purpose of proving this allegation include an order book entry showing a conviction of appellant which is not dated, and a commitment to jail for confinement upon such conviction, dated October 20, 1977. The exhibits clearly evidence a conviction occurring shortly before the commitment order was signed on October 20, 1977, but do not show a specific date for that conviction. The evidence is at variance with the allegation in the charge, but given the presence of the other identifying characteristics of the particular instance of conviction, the variance was not material. As before, appellant was not misled in his defense of the allegation by this variance.

IX.

■ Exhibits introduced during the habitual offender phase of the trial contained references to offenses with which appellant had been charged but not convicted. It was therefore agreed by the parties that the trial prosecutor would read the exhibits to the jury, deleting references to such other charges as he went along. During the reading he read the words "Count I" to the jury. When objection by defense counsel was made, the trial prosecutor responded "Did I refer to Count I?" The judge promptly admonished the jurors and required them to individually promise to disregard the remark. The trial court denied a motion for mistrial. He now contends that ruling was error.

In *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843, we held that in circumstances such as these, the court should consider whether the conduct of the prosecutor was misconduct, and evaluate the probable persuasive effect of any misconduct on the jury's decision. Here the documents before the trial prosecutor were complicated and edited by hand, and in light thereof and of his retort to the objection, we are not persuaded that the prosecutor engaged in intentional misconduct. We likewise regard the words "Count I" to be very general and ambiguous in import, and not likely to have had great impact on the jury's decision. The misreading was not repeated. Under these circumstances the denial of the motion for mistrial was proper.

The conviction for criminal recklessness is reversed and the conviction and sentence for attempted manslaughter is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.