In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 04-3356

ANTHONY GRIGSBY,

*Petitioner-Appellant,*

*v.*

ZETTIE COTTON, Superintendent,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 04 C 645—**John Daniel Tinder**, *Judge.*

---

ARGUED APRIL 19, 2006—DECIDED AUGUST 1, 2006

---

Before COFFEY, EASTERBROOK, and MANION, *Circuit Judges.*

MANION, *Circuit Judge.* In 1988 an Indiana state court enhanced Anthony Grigsby's sentence for attempted armed robbery to 50 years' imprisonment because the court found he was a habitual offender. He had pleaded guilty to armed robbery in 1978 and had been convicted of burglary in 1986. Grigsby filed this petition for a writ of habeas corpus, 28 U.S.C. § 2254, in April 2004, alleging, as relevant to this appeal, that his 1978 guilty plea was unconstitutional because the state failed to provide him counsel during his juvenile waiver hearing (Grigsby was 16 years old when he

was arrested). Thus the conviction, he argued, could not properly have been used to enhance his 1988 sentence. The district court denied the petition and this court granted Grigsby a certificate of appealability. *See Grigsby v. Cotton*, No. 04-3356 (7th Cir. Apr. 14, 2005). We affirm the denial of relief.

Police arrested 16-year-old Anthony Grigsby on August 19, 1977, on suspicion that he was involved in a murder and armed robbery. A "case chronology" indicates that an initial hearing was held on the same day. At some point, not disclosed by the record, Grigsby was formally transferred from juvenile to criminal court, and on November 9, 1977, counsel entered an appearance in the Criminal Court of Marion County on Grigsby's behalf. Grigsby pleaded guilty only to the armed robbery charge. On June 14, 1978, when Grigsby was still only 17 years old, the court sentenced him as an adult to 10 years' imprisonment. *Indiana v. Grigsby*, No. CR 77-346D (Sup. Ct. Marion County 1978).

Grigsby was next convicted of burglary in 1986 and, in 1988, of attempted armed robbery.[1] He is currently serving a 50-year sentence for the attempted robbery, which was enhanced because he was a habitual offender. *Indiana v. Grigsby*, No. CR 87-136E (Sup. Ct. Marion County 1988), *aff'd*, No. 49A02-8904-CR-142 (Ind. Ct. App. 1989) (unpublished memorandum decision). Though the record does not reveal the state court's sentencing calculations, the parties agree that Grigsby's habitual offender status was in part based on his 1978 conviction for armed robbery.

Grigsby pursued numerous state post-conviction petitions. We begin with the petitions attacking his 1978

---

[1] The record does not indicate the dates Grigsby was released from prison, thus enabling him to commit the subsequent crimes.

conviction. In May 1995 he filed his first petition for post-conviction relief, apparently while he was serving the present term of imprisonment for his 1988 conviction. Grigsby alleged that the judge in his 1978 case did not properly conduct the plea colloquy and did not find an "adequate factual basis" for his plea. In March 2000, at Grigsby's request, the court dismissed his 1995 petition without prejudice.

In the meantime, in July 2001, Grigsby filed a second post-conviction petition, asserting that his 1978 conviction should be set aside because counsel was ineffective. He argued that he did not receive a juvenile waiver hearing and thus, according to him, the criminal court was without jurisdiction, but that counsel failed to discover the error. The court conducted an evidentiary hearing and denied the petition, finding that "the evidence shows that there was a juvenile waiver hearing" and, in the alternative, that the doctrine of laches barred review of his 1978 conviction because the state had destroyed its case files.[2] Grigsby appealed, arguing that the state had not proved laches, and the Indiana Court of Appeals affirmed, *Grigsby v. Indiana*, No. 49A02-0301-PC-75 (Ind. Ct. App. 2003) (unpublished memorandum decision). The Indiana Supreme Court denied Grigsby's request for transfer.

We turn next to the petitions that Grigsby filed against his 1988 conviction. In January 1991, he filed a post-conviction

---

[2] The state court found that Grigsby failed to demonstrate the absence of a juvenile waiver hearing because a "Pre-Sentence Report" filed in his 1978 case stated that he was "waived to criminal court." The court also commented that Grigsby's counsel during the 1978 case testified at the evidentiary hearing on the post-conviction petition that he would have investigated the criminal court's jurisdiction.

petition, though the court granted his request to withdraw that petition in October 1996. Grigsby filed his second post-conviction petition in November 1999, and the court denied it in July 2000. Grigsby appealed, the Indiana Court of Appeals affirmed, *Grigsby v. Indiana*, No. 49A02-8-PC-490 (Ind. Ct. App. 2001) (unpublished memorandum decision), and the Indiana Supreme Court denied Grigsby's request for leave to transfer.

Grigsby filed the § 2254 petition at issue in this appeal in April 2004. After he filed several traverses and amended petitions—prompted by district court orders instructing him to clarify the conviction he was challenging and whether he had presented his challenge to the state courts—his filings eventually converged on a single issue. Grigsby argued that his rights to due process and effective assistance of counsel were violated because his 1988 conviction was enhanced based on his 1978 conviction, which, according to him, was unconstitutionally obtained because he did not receive counsel at the time of his juvenile waiver hearing. The district court denied the petition. The court relied on *Lackawanna County District Attorney v. Coss*, 532 U.S. 394 (2001), to find that Grigsby met the custodial requirement of § 2254. However, citing *Martin v. Deuth*, 298 F.3d 669, 671-72 (7th Cir. 2002), the court found that Grigsby could not challenge the use of his 1978 conviction to enhance his 1988 sentence because he had fully served the sentence for his 1978 conviction.

We begin with the district court's reliance on *Lackawanna*. In *Lackawanna* and *Daniels v. United States*, 532 U.S. 374 (2001), the Supreme Court established the principle that "once a state conviction is no longer open to direct or collateral attack in its own right . . . ," a habeas petitioner "generally may not challenge the enhanced sentence

through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." *Lackawanna*, 532 U.S. at 404. But, the Court recognized a single exception: a petitioner may challenge an enhanced sentence when it is based on a previous conviction that was obtained in violation of *Gideon v. Wainwright*, 372 U.S. 335 (1963), which announced the Sixth Amendment right to counsel. *Lackawanna*, 532 U.S. at 404-05.

Grigsby's petition is facially consistent with the exception described in *Lackawanna*. *Martin*, in which the petitioner failed to assert the *Lackawanna* exception, 298 F.3d at 672, does not bar Grigsby's petition. Thus the question for us is whether his 1978 conviction was obtained in violation of his Sixth Amendment right to counsel. Grigsby argues that his right to counsel was presumptively violated because the record is silent regarding counsel's presence at his juvenile waiver hearing. Accordingly, he contends that the burden shifts to the state to prove the absence of a Sixth Amendment violation. *Burgett v. Texas*, 389 U.S. 109, 114-15 (1967).

Before we reach the merits of Grigsby's claim, we must first address three separate procedural issues, all raised for the first time on appeal by the state. The state contends that the petition is untimely and that the *Lackawanna* claim is barred by procedural default. Procedural bars, as Grigsby suggests, are affirmative defenses subject to forfeiture. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Lewis v. Sternes*, 390 F.3d 1019, 1029 (7th Cir. 2004). And, arguments generally may not be raised for the first time on appeal. *Canaan v. McBride*, 395 F.3d 376, 382 (7th Cir. 2005). But, we are under no obligation to strictly enforce a state's forfeiture or a petitioner's procedural failings. Rather, we must decide whether "the interests of justice" require a resolution of the

merits of a petition despite procedural defenses raised for the first time on appeal. *Granberry v. Greer*, 481 U.S. 129, 136 (1987); *see Day v. McDonough*, 126 S. Ct. 1675, 1681-82 (2006); *Jones v. Hulick*, 449 F.3d 784, 787-88 (7th Cir. 2006).

Here, the state's only responsive pleading in the district court was its response, which was filed before Grigsby refined his petition with several amendments and traverses. In its response, the state observed that *Lackawanna* allows a petitioner to assert a Sixth Amendment violation to invalidate a prior conviction used to enhance his present sentence, but went on to explain that the "[p]etitioner makes no claim that this is the case, and no such claim is readily apparent." The state did not, however, address the timeliness of Grigsby's petition or any potential procedural default.

We will not enforce the alleged untimeliness of Grigsby's petition. The state's argument on appeal chastises Grigsby for not arguing—presumably in his opening brief—that we should look past the alleged untimeliness of his petition and his procedural default. But it was the state's duty to raise those defenses in the district court, and it has provided us no reason to excuse its failure to do so. *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (a procedural default "is an affirmative defense that the state is obligated to raise and preserve and . . . one that it can waive."). The timeliness of the petition, regardless of the claims it raised, was clear at the time the state filed its response. The period of limitations set out in 28 U.S.C. § 2244(b)(3) is not jurisdictional, and thus we are not bound to enforce it against a petitioner. *See Day*, 126 S. Ct. at 1681. In this case, it would be inappropriate for us to reach a timeliness argument that the state did not raise in its response in the district court, and which did not form the basis for the district court's ruling. *Compare Day*, 126 S. Ct.

at 1684 (district court may raise timeliness *sua sponte* despite state's erroneous concession that habeas petition was timely), *with Eberhart v. United States*, 126 S. Ct. 403, 407 (2005) (per curiam) (government forfeited timeliness of defendant's Federal Rule of Criminal Procedure 33(b) motion by raising it after district court ruled on motion's merits).

We also cannot determine that Grigsby failed to present his claim to the state courts or should be barred by an independent and adequate state procedural ruling. The state argues that Grigsby failed to present his *Lackawanna* claim to the Indiana Supreme Court and that the Indiana Court of Appeals ruled that laches barred him from attacking his 1978 conviction. A habeas petitioner must ordinarily present his claim to the highest state court to preserve federal review, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Cossel v. Miller*, 229 F.3d 649, 653 (7th Cir. 2000), and we cannot consider a claim if we determine that "the state court decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment," *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003).

The state constructs its procedural default and laches arguments based on the 2001 post-conviction petition that Grigsby filed in his 1978 case. That round of post-conviction proceedings, however, is not relevant to Grigsby's exhaustion of state remedies for his 1988 conviction—the conviction for which he now seeks collateral relief. Grigsby pursed post-conviction relief for his 1988 conviction, but the state has not provided any petitions, responses, or judicial memoranda pertaining to that round of proceedings, nor has it described the claims pursued and resolved during those proceedings. The only evidence in the record regarding Grigsby's attacks on his current sentence are docket

sheets. The state's laches argument similarly ignores the relevant post-conviction proceedings: those that attack Grigsby's 1988 conviction. The state has therefore failed to meet its burden of showing that Grigsby did not properly present his claims to the Indiana courts or that an independent and adequate state procedural ruling exists.

We turn now to the merits of Grigsby's petition. His *Lackawanna* claim turns on whether his juvenile waiver hearing was a "critical stage[ ] of the prosecution" during which *Gideon* required representation by counsel. *Jackson v. Miller*, 260 F.3d 769, 775 (7th Cir. 2001). In 1977 Indiana vested jurisdiction over "individuals under the age of eighteen (18) years at the time the offense is alleged to have been committed" in the juvenile courts. *See* Ind. Code § 31-5-7-13 (1976)*.* The juvenile court could, however, hold a hearing to determine whether it should waive jurisdiction and transfer the juvenile to criminal court, if he was sixteen years of age or older and was charged with certain enumerated offenses. *See* Ind. Code § 31-5-7-14 (1976). Generally, juveniles are entitled to counsel at waiver hearings. *See Application of Gault*, 387 U.S. 1, 36 (1967) (interpreting *Kent v. United States*, 383 U.S. 541, 561 (1966), as confirming a juvenile's right to counsel at a waiver hearing); *Summers v. State*, 230 N.E.2d 320, 325 (Ind. 1967) (applying *Kent* to establish juvenile's right to full hearing prior to transfer and right to counsel at hearing). And, because "[p]resuming waiver of counsel from a silent record is impermissible," *Burgett*, 389 U.S. at 114-15, the state bears the burden of proving that Grigsby's Sixth Amendment right to counsel was honored. But here the state does not argue that counsel was in fact provided. Thus, Grigsby's claim would, without more, be a basis for granting his habeas corpus petition.

The state, however, challenges the notion that the juvenile courts had original jurisdiction over Grigsby. In 1977, when Grigsby's waiver hearing would have occurred, the state criminal courts had original jurisdiction over a juvenile charged with first degree murder.[3] *See* Ind. Code § 31-5-7-13 (1976). Contemporaneous state supreme court decisions confirm this practice. *See, e.g., Snodgrass v. State*, 406 N.E.2d 641, 645 (Ind. 1980); *Blythe v. State*, 373 N.E.2d 1098, 1099 (Ind. 1978); *Lindley v. State*, 373 N.E.2d 886, 888-89 (Ind. 1978) ("child" defined to exclude all persons charged with first degree murder). Notably, in *Lindley*, the court found that a waiver hearing was not required to establish the criminal court's jurisdiction:

> When the indictment for first degree murder was returned by the grand jury, jurisdiction over the matter immediately vested in the criminal division of the Lake Superior Court. At the same time the juvenile

---

[3] The state also argues that, in addition to being unnecessary, a juvenile waiver hearing did not occur in this case. (According to the state, "[t]he scant record of a waiver proceeding is likely because no proceeding was necessary and never occurred."). The state relies, in part, on Grigsby's own post-conviction filings in state court, in which he argued that he was deprived of a waiver hearing (not simply counsel at the hearing). But a state court, after conducting an evidentiary hearing, found that a juvenile waiver hearing had occurred. The state's conjecture here, based only on the law as it existed in 1977, is insufficient to overcome this factual finding, even though Grigsby once took the same position that the state now asserts. Moreover, as Grigsby points out, the state itself argued in the state court that "[a]ll evidence indicates that a juvenile waiver hearing was conducted before Defendant's case was waived to adult criminal court."

> division was immediately divested of jurisdiction. The
> juvenile court subsequently did the only thing which by
> law it could do it dismissed the petition for delin-
> quency. We therefore hold there was no error in the
> failure to hold a waiver hearing.

*Lindley*, 373 N.E.2d at 888-89. The court further observed, relying on *State ex rel. Imel v. Municipal Court*, 72 N.E.2d 357 (Ind. 1946), "that it is the charge that is controlling." *Lindley*, 373 N.E.2d at 888. Thus, contrary to the weight of general precedent that explains the importance of counsel at a juvenile waiver hearing, *see Application of Gault*, 387 U.S. at 36, the state argues that Grigsby, by operation of statute, was not within the jurisdiction of the juvenile courts because he was charged with first degree murder.

Grigsby responds that it is irrelevant that a juvenile waiver hearing was optional; he contends that, because he received a hearing, he was entitled to counsel. But defendants are entitled to counsel only at critical stages and, if the hearing was optional and his transfer was automatic under the Indiana Code, the waiver hearing was no longer "critical" to Grigsby. *Cf. Simpson v. State*, 381 N.E.2d 1229, 1232 (Ind. 1978) ("Since the Juvenile Court had no jurisdiction over appellant as to the felony murder charge, the waiver order on that charge was of no effect."); Ind. Code § 35-13-4-1 (1976) (including felony murder within definition of first degree murder). If the transfer to criminal court was a *fait accompli*, as the state suggests it was, Grigsby's Sixth Amendment right could not have been transgressed.

Contemporaneous Indiana Supreme Court precedent portrays a uniform application of state law and thus Grigsby cannot claim that his Sixth Amendment right to counsel was violated. Grigsby argues that "[n]owhere does the Supreme Court, in its decisions upholding the obser-

vance [sic] the Sixth Amendment and due process rights at a juvenile waiver hearing, allow for the right to counsel to be diminished because the court may, many years later, be found to not have proper jurisdiction over the case." That argument, however, does not undermine the state's position that a juvenile waiver hearing was not, under the Indiana Code, a critical stage at the time it would have occurred. Because his constitutional right to counsel was not violated, Grigsby cannot set aside the use of his 1978 conviction to enhance his 1988 sentence.

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*