**Larry PERKINS and George Redman, Appellants,**

v.

**STATE of Indiana, Appellee.**

**No. 784S267.**

Supreme Court of Indiana.

Oct. 25, 1985.

Susan K. Carpenter, Public Defender, June D. Oldham, Deputy Public Defender, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellants were tried jointly before a jury. Perkins was found guilty of Conspiracy to Deal in More Than Thirty Grams of Marijuana and Conspiracy to Traffic with an Inmate, both Class D felonies. Redman was found guilty of Conspiracy to Deal in Less Than Thirty Grams of Marijuana, a Class A misdemeanor, and Conspiracy to Traffic with an Inmate, a Class D felony. Both were found to be habitual offenders. Perkins was sentenced to consecutive four (4) year terms for the Class D felonies, with a thirty (30) year enhancement for the habitual offender finding. Redman was sentenced to consecutive terms of one (1) year for the Class A misdemeanor and four

(4) years for the Class D felony, with an enhancement of thirty (30) years for being found to be an habitual offender.

The facts are: Appellants, inmates at the Pendleton Reformatory, devised a scheme to smuggle marijuana into the prison. Perkins' wife, Kay, her sister, Patty Sechrist, and Lamar Mast participated in the scheme on different occasions, wearing shoes with marijuana concealed in the heels into the prison and trading those shoes with appellants.

Subsequently, Sechrist and Mast informed Detective Charles Criswell of the Marshall County Sheriff's Department of their participation. Mast gave Detective Criswell several pairs of shoes which were used to transport marijuana into the prison. Detective Criswell asked Loren Corner, a correctional officer at the prison, to search Perkins' cell. Corner recovered a pair of shoes which he gave to Detective Criswell. Testing revealed traces of marijuana on the shoes. Appellants were then charged with the two conspiracy counts on which they were convicted.

Redman contends the trial court erred in overruling his motion to set aside the selection of the county for change of venue. On April 8, 1982, Perkins filed a verified motion for change of venue. Eleven days later Redman filed an unverified motion for change of venue, which was properly denied. On April 20, Perkins' motion was granted and all parties were notified. The following day Perkins' counsel and the prosecuting attorney struck from the counties listed. Redman's counsel did not participate in the process. On August 6 Redman filed his motion to set aside the selection on the ground that he was not present to participate in the selection of the county of venue. That motion was denied.

■ "A change of venue for one of two or more jointly charged defendants is a change of venue for all, absent a showing of prejudice by a defendant." *State ex rel. Banks v. Hamilton Superior Court* (1973), 261 Ind. 426, 427, 304 N.E.2d 776. It is apparent from the record that Redman was notified of the granting of Perkins'

motion but not of a specific time to appear in court to participate in the venue selection. Redman has failed to show that he was prejudiced or harmed by the change of venue to Elkhart County. Therefore the denial of his motion to set aside selection of the county of venue does not constitute reversible error.

Perkins argues the trial court erred in denying his motion to suppress certain evidence, namely a number of letters he had written from prison to his wife.

In the letters Perkins instructed his wife, Kay, as to the procedure to be used in smuggling drugs into the prison. Kay showed several of the letters to Sechrist, who informed Detective Criswell that she had been shown the letters by Kay, then living in her grandmother's trailer. Detective Criswell obtained a warrant to search the trailer and there seized a number of letters which were later admitted at trial as State's Exhibits 1–17.

The motion to suppress alleged: that he had a reasonable expectation of privacy in the items seized; that there was no probable cause to support the warrant; that the warrant was defective due to a lack of specificity; and that the letters were protected as confidential communications between husband and wife.

■ In cases involving Fourth Amendment search and seizure claims, the initial question which must be answered is whether the person who was aggrieved had any personal and legitimate expectation of privacy in the place searched. *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387; *Burris v. State* (1984), Ind., 465 N.E.2d 171. The letters written by Perkins were seized from the residence of his wife's grandmother. There is no indication Perkins had any proprietary interest in the trailer which would give him a legitimate expectation of privacy in the premises. *Tabor v. State* (1984), Ind., 461 N.E.2d 118.

Perkins nevertheless argues that because the law has recognized the privileged nature of confidential communications between husband and wife, he had a legitimate expectation of privacy in the letters sufficient to afford him standing to assert his Fourth Amendment claim.

Perkins' argument is unavailing. As discussed below, the letters did not in fact represent confidential communications. The trial court did not err in denying the motion to suppress.

■ Communications between husband and wife which are intended to be confidential are privileged. *Solomon v. State* (1982), Ind., 439 N.E.2d 570; *Fielden v. State* (1982), Ind., 437 N.E.2d 986. If, however, the communication is intended to be transmitted to a third person or is made in the presence of a third person, there is no privilege because the communication is not confidential. *Fielden, supra; Resnover v. State* (1978), 267 Ind. 597, 372 N.E.2d 457.

■ At the hearing on the motion to suppress Kay Perkins testified she permitted Sechrist to read a section of one of the letters. Sechrist testified at trial that Kay had shown her letters written to Kay by her husband. Sechrist also testified that the letters she read communicated the plan to smuggle marijuana into the prison, lending a reasonable inference that the information was to be conveyed to the other parties to the conspiracy. *See Resnover, supra.* There was no error in the admission of the letters.

Appellants allege the trial court erred in admitting into evidence State's Exhibits 25 and 26, copies of visitors logs from the Pendleton Reformatory. Several witnesses testified that they visited appellants at the Reformatory to carry in drugs. The court admitted the evidence over appellants' objection that the proper foundation was not established to allow admission of the exhibits under the business record exception to the hearsay rule.

■ Official records such as the visitors logs may be evidenced by copies attested by the officer, or his deputy, having legal custody of the records. Ind.R.Tr.P. 44(A)(1); *McBrady v. State* (1984), Ind., 459 N.E.2d 719. The sponsor of an exhibit offered under the business record exception to the hearsay rule is not required to

have personally made it, filed it or have firsthand knowledge of the transaction represented by it. The witness is only required to show that the exhibit is part of records kept in the routine course of business and placed in the record by an authorized person having personal knowledge of the transaction represented at the time of entry. *McBrady, supra; Pitts v. State* (1982), Ind., 439 N.E.2d 1140.

■ Corner's testimony was sufficient to establish the foundation necessary for the admission of the exhibits.

Perkins contends the trial court erred in admitting State's Exhibits 28 and 29, statements given to the police by Lamar Mast. During direct examination of Mast the police statements were admitted into evidence without objection. Perkins argues, however, that the court committed fundamental error by admitting the allegedly hearsay evidence.

■ The failure to object at trial precludes appellate review of this alleged error. *Mitchell v. State* (1983), Ind., 455 N.E.2d 1131. Had the issue been properly preserved, it would not constitute prejudicial error. Perkins contends that because Mast's memory was incomplete on several points, introduction of the police statements amounted to use of the *Patterson* rule to admit substantive evidence in lieu of available and direct testimony of the witness. *See, e.g., Stone v. State* (1978), 268 Ind. 672, 377 N.E.2d 1372. We cannot agree. Mast had been questioned concerning the subject matter of the police statements and was later subjected to extensive cross-examination; consequently, there was no abuse of the *Patterson* rule. *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, *cert. denied* (1983), 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284.

Perkins alleges the trial court erred in admitting State's Exhibit 20, a box containing a pair of brown shoes seized from his prison cell. He contends the seizure was illegal because made without a search warrant and without probable cause.

Upon being informed by Mast and Sechrist of the smuggling activities, Detective Criswell apprised Corner of Perkins'

involvement and requested that Corner search Perkins' cell. Corner recovered a pair of brown shoes from the cell and delivered them to Criswell. Traces of marijuana were found on the shoes.

■ The United States Supreme Court recently held in *Hudson v. Palmer* (1984), —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393, that a prison inmate does not have a reasonable expectation of privacy in his prison cell entitling him to Fourth Amendment protection against unreasonable searches and seizures. The Court stated that a right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security. *Id.* at ——, 104 S.Ct. at 3201, 82 L.Ed.2d at 404. We likewise hold that Perkins did not have a reasonable expectation of privacy in his prison cell entitling him to the protections of the Fourth Amendment.

Appellants contend the trial court improperly granted the prosecution's motion in limine regarding the juvenile record of prosecution witness Sechrist. They assert they were denied their Sixth Amendment right to cross-examine Sechrist on that subject. Appellants properly recognize that no offer to prove was made at trial, thus creating a procedural bar to the raising of this issue on appeal; however, they argue the alleged denial of their right of cross-examination rises to the level of fundamental error.

■ We cannot agree. The disposition of a juvenile matter does not constitute a criminal conviction. *Pallett v. State* (1978), 269 Ind. 396, 381 N.E.2d 452. Juvenile records are not admissible at trial for purposes of impeachment. *Hoskins v. State* (1978), 268 Ind. 290, 375 N.E.2d 191. There was no error in the preclusion of the evidence.

Appellants contend the trial court erred in denying them the opportunity to cross-examine prosecution witness Mast concerning Mast's plea of guilty to a Criminal Recklessness charge and in refusing to ad-

mit into evidence the plea agreement on that charge.

In exchange for his testimony against appellants, Mast was permitted to plead guilty on January 29, 1982, to a class D conspiracy charge, for which he was given a two-year suspended sentence and two years probation. On April 19, 1982, Mast was charged with Criminal Recklessness. Pursuant to a plea agreement on that charge, it was agreed that Mast's probation on the conspiracy conviction would not be revoked.

The court did allow appellants to cross-examine Mast on his plea agreement on the conspiracy charge and on his criminal conversion and deception convictions. Appellants now assert that evidence of the Criminal Recklessness plea agreement, which allowed Mast to retain his probation under the conspiracy plea agreement, was crucial to show Mast's bias.

■ The trial court has broad discretion in determining the permissible scope of cross-examination to test the credibility of a witness. *Schalkle v. State* (1979), 272 Ind. 134, 396 N.E.2d 384. Generally, any fact tending to impair the credibility of a witness which shows his interest, ulterior motive or bias is an appropriate matter for cross-examination. *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347; *Acker v. State* (1959), 239 Ind. 466, 158 N.E.2d 790. The bias and ulterior motives of a witness may be revealed so long as there is a reasonable degree of probability that the witness is biased because of the evidence at issue. *Lindley v. State* (1978), 268 Ind. 83, 373 N.E.2d 886.

■ Here, the trial court correctly determined that the connection between the controverted evidence and the issue of bias was too attenuated to sustain a reasonable degree of probability that the witness was biased because of the subsequent plea agreement. We find no abuse of discretion in the trial court's restriction of appellants' cross-examination of the witness.

■ Appellants contend the trial court erred in refusing to submit to the jury their tendered instruction no. 12. They concede that the tendered jury instruction was not

signed. Such omission results in the waiver of the allegation of error. *Harding v. State* (1984), Ind., 457 N.E.2d 1098; *Askew v. State* (1982), Ind., 439 N.E.2d 1350.

Appellants contend the evidence was insufficient to sustain the conspiracy convictions. They argue the State failed to show intent or an agreement to deal in marijuana and failed to establish an overt act in furtherance of the alleged conspiracy to traffic with an inmate.

Where the sufficiency of the evidence is challenged, this Court will neither weigh the evidence nor determine the credibility of witnesses. *Smith v. State* (1981), 275 Ind. 642, 419 N.E.2d 743.

The statute defining the offense of conspiracy reads in pertinent part:

"(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. However, a conspiracy to commit murder is a Class A felony.

"(b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement." Ind. Code § 35-41-5-2.

■ The requisite elements of the offense are: 1) intent to commit a felony; 2) an agreement with another person to commit the felony; and 3) an overt act in furtherance of that agreement. *Williams v. State* (1980), 274 Ind. 94, 409 N.E.2d 571. Intent may be inferred from acts committed and from the surrounding circumstances. *Reese v. State* (1983), Ind., 452 N.E.2d 936; *Williams, supra.* As the agreement element may also be proven by circumstantial evidence, it is not necessary that the prosecution present direct evidence of a formal express agreement. *Survance v. State* (1984), Ind., 465 N.E.2d 1076.

■ The jury could reasonably infer an agreement among appellants and the other participants. Contrary to appellants' contention that there is no evidence to estab-

lish intent to deal in more than thirty grams of marijuana, the record clearly reveals testimony that between one and two ounces of marijuana was placed in the shoes delivered to appellants.

■ Appellants' argument that the prosecution failed to show an overt act in furtherance of the trafficking conspiracy, in particular that there is no direct evidence that a controlled substance was actually brought into the prison, is without merit. *See* Ind. Code § 35–44–3–9 (West Supp. 1985). Both Sechrist and Mast testified they carried marijuana into the prison. Ronald Klug, an analytical toxicologist for the Northwest Indiana Criminal and Toxicology Laboratory, testified that he found traces of marijuana on several of the shoes taken from Perkins' cell. Such testimony constitutes sufficient evidence to establish an overt act in furtherance of the conspiracy to traffic in a controlled substance with an inmate.

Appellants contend the imposition of separate sentences for the conspiracy convictions amounts to double punishment in violation of the Fifth Amendment. The crux of their argument is that there was but one agreement, if any, to carry drugs into the prison and thus only one conspiracy.

■ The gist of the offense of conspiracy is the agreement. A single agreement to commit several unlawful acts cannot be punished by multiple convictions under a general conspiracy statute. *Braverman v. United States* (1942), 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23; *Ridgeway v. State* (1981), Ind.App., 422 N.E.2d 410. The question presented does not concern whether the crimes of dealing in marijuana and trafficking with an inmate have different elements, *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893, but rather whether there was one, or more than one, conspiracy to commit those crimes. *See Ward v. United States* (11th Cir.1983), 694 F.2d 654. When separate conspiracies are charged, the relevant inquiry is whether there existed more than one agreement to perform some illegal act or acts. *Braverman, supra; see Albernaz v. United States* (1981),

450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275.

The information charging appellants with violating the general conspiracy statute, Ind. Code § 35–41–5–2, reads in pertinent part:

"COUNT I—CONSPIRACY, a class D felony

"[B]etween September 1981 and November, 1981 ... Kay Perkins, LaMar Mast, Larry Perkins, George Redman and a juvenile did agree with and among each other for the object and purpose and with the intent to commit a felony, to-wit: dealing in more than 30 grams of marijuana, a controlled substance, a class D felony in that the said Kay Perkins, LaMar Mast and a juvenile *did possess with the intent to deliver to George Redman and Larry Perkins a controlled substance ...*

"COUNT II—CONSPIRACY, a class D felony

"[B]etween September, 1981 and November, 1981 ... Kay Perkins, LaMar Mast, Larry Perkins, George Redman and a juvenile did agree with and among each other for the object and purpose and with the intent to commit a felony, to-wit: trafficing (sic) with an inmate, a class D felony, in that Kay Perkins, LaMar Mast and a juvenile *did knowingly carry into the Indiana State Reformatory at Pendleton, Indiana, a controlled substance with intent to deliver such article to Larry Perkins and George Redman, inmates at such penal facility ...*" (emphasis added).

In *United States v. Marable* (5th Cir. 1978), 578 F.2d 151, the court reversed, on double jeopardy grounds, the defendant's conviction for conspiring to possess cocaine with intent to distribute because the defendant had previously been convicted of conspiring to distribute heroin. The court found there had been only one conspiracy to distribute both cocaine and heroin. As suggested by the court, "[w]hen the events of the alleged heroin conspiracy are overlaid with those of the cocaine conspiracy, there emerges not two discrete patterns of

activity but a single design with the events most important in each case appearing at crucial and common junctures." *Id.* at 156.

■ Here both conspiracy counts center on the same act, delivery of the controlled substance to appellants at the Reformatory. The participants named in both counts were identical. The facts lead us to the conclusion that there was one agreement among the conspirators to purchase and deliver drugs to appellants and thus only one conspiracy.

■ The State contends in its brief that the evidence presented at trial shows that there were two agreements, one to deliver marijuana to the prison and another to sell the marijuana to inmates in the prison. An inmate at the Reformatory did testify that he purchased marijuana from Perkins on several occasions. However, appellants were charged with conspiring to deliver the marijuana into the prison, not with selling the drugs to fellow inmates. One of appellants' conspiracy convictions must be vacated.

■ Appellants raise a number of issues concerning the habitual offender findings. They contend, and we agree, that the prosecution failed to prove that they had in fact been sentenced following their prior unrelated felony convictions. Because the evidence is insufficient to support the habitual offender findings, we need not address appellants' additional allegations of error regarding the habitual offender proceedings.

Originally, the information charging appellants as habitual offenders contained sentencing data related to their similar prior convictions for theft in 1976 and for felony murder in 1981. The hearing on that charge resulted in a hung jury. The prosecution then successfully moved to amend the habitual offender charge, in doing so deleting all the sentencing information. The court also granted the prosecution's motion in limine preventing defense counsel from making any mention of the sentences imposed on the prior convictions. At the second habitual offender hearing, before a new jury, a stipulation and agreement regarding the aforementioned felony convictions was read to the jury by the court. The prosecution then rested its case, without presenting any evidence to show appellants were sentenced following their 1976 and 1981 convictions.

■ The record is devoid of evidence to support an inference that appellants had been twice sentenced for the stipulated-to prior felony convictions. The State has the burden of proving beyond a reasonable doubt that a defendant has been twice convicted and twice sentenced for prior felony convictions. *Woods v. State* (1983), Ind., 456 N.E.2d 417; *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339.

The State argues that although no direct evidence was presented concerning the sentences, there was sufficient evidence to prove that appellants were in fact sentenced following their prior convictions. The State contends that in their opening and final argument defense counsel stated that appellants were currently serving sentences. The State also cites testimony by Perkins in which he stated that he was presently incarcerated and had served four years of a fifty-year sentence.

■ Opening and closing statements are not evidence. *Buise v. State* (1972), 258 Ind. 321, 281 N.E.2d 93. Even assuming *arguendo* Perkins' testimony tended to show he had been sentenced following the felony murder conviction, there is no evidence regarding a sentence following the theft conviction. There is no evidence Redman had been sentenced following either of his prior convictions. For the foregoing reasons, the habitual offender findings are vacated.

This cause is remanded for sentencing not inconsistent with this opinion. The trial court is in all other things affirmed.

DeBRULER, PIVARNIK and SHEPARD, JJ., concur.

PRENTICE, J., concurs in result.