**Michael JONES, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

**No. 45A03–8701–CR–30.**

Court of Appeals of Indiana,
Third District.

Aug. 26, 1987.

---

Nathaniel Ruff, Appellate Public Defender, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Michael Jones was convicted by a jury of robbery,[1] a class B felony. He was sentenced to ten years' imprisonment, with four years suspended.[2]

Jones contends on appeal that the trial court erred by limiting his cross-examination of the victim.

The victim, Francisco Rivera Rosas, testified that the defendant was one of two men who robbed him of about $180.00. He said the defendant had a gun. During the course of the robbery, the police arrived, and the two men fled down an alley.

Officer Fernando Villicana of the East Chicago Police Department pursued the defendant and ultimately arrested him. He found no gun and no money on the defendant or along the pursuit route.

Jones testified that he and his companion approached Francisco to obtain heroin. He said his companion had already paid for the drug. He said that when the police arrived they were not in uniform and he ran because he was in fear for his life. He also stated that he is a drug addict. Thus, at trial, Jones wanted to show that what actually occurred was a drug transaction and not a robbery.

Before trial, the trial court granted the State's motion in limine to prevent Jones from introducing into evidence the fact that Rosas had delivered drugs to an Officer Hernandez on August 27, 1985, and the fact that he had been arrested for that delivery.

At trial, the following exchange was had upon defense counsel's cross-examination of Rosas:

Q. Now, Mr. Rosas, did you ever tell the police at the East Chicago Police Department at the front desk that when these guys first walked up they asked you if you have any drugs to sell?

A. No.

Q. You never told that to the police?

A. No.

Q. Did you tell the East Chicago officer at the front desk that your reply to them was, "I don't have any drugs, and I don't use any drugs?"

A. No.

Q. You didn't tell the police that?

A. No, I don't deal with that.

Q. What do you mean, you don't deal with that?

A. I have never dealt with drugs.

Q. Never dealt with drugs?

A. No, never in forty-five (45) years I have been living.

Q. What about August 27th, '85?

(Record at page 158.)

The State objected, renewing its motion in limine. The objection was sustained.

On appeal, Jones argues that by precluding him from questioning Rosas about the August 27, 1985, drug sale and Rosas' subsequent arrest that the jury was denied the benefit of his theory of the case. He argues that such questioning was crucial to his right to confront witnesses against him, especially since Rosas had a motivation to lie, citing *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347.

However, in a bench conference just prior to the court's ruling, defense counsel argued:

I believe I should be entitled to bring in Officer Hernandez about the drug delivery of August 27th, '85 by Rosas. This would show he did deal in drugs, and this was fourteen or fifteen days before this robbery. Without any prompting on my part Roasas (sic) is the one who raised the issue of *character.* He stated to the jury he never messed with drugs. I should be allowed to bring in Hernandez to show Rosas did in fact, on August 27th, '85 deliver Heroin to Hernandez. I should be allowed to rebut.

Record at page 159. (Emphasis added.)

And, in his Belated Motion to Correct Errors, the defendant alleged the following error:

**1.** IC 1977, 35–42–5–1(2) (Burns Code Ed., 1985 Repl.).

**2.** IC 1976, 35–50–2–5 (Burns Code Ed., 1985 Repl.).

1. The court refused to allow the defendant to cross-examine the complaining witness, Francisco Rosas, about a drug delivery that he allegedly made on August 27, 1985. During cross examination, Rosas volunteered the information that he, Rosas, had "never messed with any drugs". That answer had not been elicited by any questions posed to the witness Rosas by defense counsel, but on the contrary had been freely given by the witness. By the court refusing to allow impeachment by evidence of the August 27, 1985 drug delivery to officer Hernandez, the witness was allowed to leave the jury with the impression that he had not dealt in drugs. Rosas then opened a door to otherwise inadmissible evidence and was allowed to close it at his own pleasure.

(Record at page 2.)

Thus, defense counsel argued at trial that Rosas opened the door to his prior criminal activity and that it (as well as the testimony of Officer Hernandez) should be admitted into evidence; yet, on appeal, he argues that he should have been allowed to question Rosas about the drug sale and arrest anyway—because his theory of the case depended on it.

3. Defendant's argument at trial and in his Motion to Correct Errors made it appear he was attempting to impeach the victim as to his character. However, he may not argue that on appeal either. Any error alleged in the Motion to Correct Errors not treated in the brief as directed by A.R. 8.3(A)(7) shall be deemed waived. *Williams v. State* (1973), 260 Ind. 543, 297 N.E.2d 805, 807. Even if Jones had preserved this argument on appeal, the mere fact that a criminal charge has been made, which is not followed by a conviction, is not relevant to effect the credibility of a witness upon cross-examination. *Woodley v. State* (1949), 227 Ind. 407, 86 N.E.2d 529. Even when acts of misconduct have resulted in *convictions* only those convictions for crimes of an infamous nature or crimes involving dishonesty or false statement may be used for impeachment purposes. *Haynes v. State* (1980), Ind.App., 411 N.E.2d 659, 663, *reh. denied.* (Emphasis added.) No drug-related crime falls under those crimes designated as infamous for impeachment purposes nor does drug use or involvement have any bearing on the witness's propensity to tell the

It should be noted, first, that to be sufficient to preserve error, an objection must not only be timely, but must be specific, *see Winston v. State* (1975), 165 Ind. App. 369, 332 N.E.2d 229, 231 *trans. denied*, and second, that issues raised in a party's brief which were not raised in the Motion to Correct Errors are not properly before the appellate court. Ind.Rules of Procedure, Trial Rule 59(D); Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *McNeal v. State* (1982), Ind.App., 434 N.E.2d 127, 128, *trans. denied.*[3]

Thus, appellant has waived any error which occurred below.[4]

It could be argued that we should consider the exclusion of Rosas' testimony as "fundamental error." The "fundamental error" doctrine permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that "the record reveals error so prejudicial to the rights of the Appellant that he could not have had a fair trial." *Winston, supra,* 332 N.E.2d at 231. The doctrine of "fundamental error" allows an appellate court to by-pass the normal rules of appellate procedure, such as the requirement of a timely and specific objection, and, in so doing, to disregard the sound judicial policy underlying that procedure.

truth. *Otto v. State* (1980), Ind.App., 398 N.E.2d 716, 717, *trans. denied.* Defendant contended at trial that Rosas opened the door to his prior criminal activity and so waived the protection afforded by the rule. However, in *Fultz v. State* (1982), Ind.App., 439 N.E.2d 659, *trans. denied,* the Court stated that this door may be opened by a *direct* examination question which invites an answer containing evidence of any criminal *conviction. Id.* at 661. (Emphasis added.) Here, no reference to any prior charges nor convictions was made on direct examination.

The trial court told the defendant he was free to impeach the witness using the police report which contained an officer's notation that Rosas had told him that the two men first asked him for drugs. However, defense counsel chose not to do that, but did later call the officer. The officer testified that what was contained in the report was true.

4. As to defendant's argument that the jury was deprived of his theory of the case, the defendant himself testified that the event in question was a drug transaction, not a robbery.

*Id.* at 232. (Footnote omitted.) The circumvention of established procedures permitted by the "fundamental error" doctrine constitutes a foreceful reason for our Supreme Court's reluctance to invoke the doctrine unless the record reveals "blatant error" that denies "the Appellant fundamental due process." *Id.*

 Here, Jones was not denied "fundamental due process."[5] In *Winston*, the Court stated:

"In the cases in which Indiana courts have found 'fundamental error', the error involved the mistake or misconduct of the trial judge in the exercise of his own affirmative duties.... In all these cases, the trial judge erred in performing some duty which the law had charged him to perform *sua sponte*. Presumably a trial judge is aware of his own *sua sponte* duties. Thus the necessity of informing him of dereliction in such duties, and the likelihood that he would properly perform such a duty merely because defense counsel informed him of it, is slight. Therefore, in the case of error by a trial judge in his *sua sponte* obligations, the policy requiring timely and specific objection ... is not as significant a factor weighing against invocation of the 'fundamental error' doctrine as in matters wherein the parties necessarily shoulder the burden of pointing out error. Such matters without doubt include the admission of evidence, since only the interested party himself can really know whether the introduction or exclusion of a particular piece of evidence is in his own best interest. Thus, adherence to the proper objection requirement in the realm of evidentiary issues is both necessary and reasonable to insure that 'the administration of the exclusionary rules of evidence is ... *fair and workable*'.... The connection between the policy favoring speedy correction of prejudicial errors so as to avoid needless mistrials and the timely objection rule as to the introduction of evidence is close and substantial; the nexus between poli-

cy and rule as to the trial court's affirmative duties is more remote. Recognition of this difference explains the courts' comparative reluctance to disregard the appellant's failure to timely object, and review the alleged error by calling it 'fundamental', respecting evidentiary errors, as opposed to errors in the trial judge's discharge of his *sua sponte* obligations."

*Id.* 332 N.E.2d at 233.

Affirmed.

HOFFMAN and NEAL, JJ., concur.

---

**5.** Even the violation of a defendant's constitutional rights does not necessarily constitute fun-

damental error. *Brown v. State* (Ind.App.1982), 435 N.E.2d 582, 583.