Timothy HOPPER, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 49S00–8703–CR–316.

Supreme Court of Indiana.

June 16, 1989.

David R. Hennessy, Indianapolis, Allan A. Ackerman, Peter J. O'Malley, Chicago, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Following a jury trial in the Marion Superior Court, Criminal Division V, Defendant–Appellant Timothy Hopper was convicted of Dealing in Cocaine, a Class A felony, and Conspiracy to Deal in Cocaine, a Class A felony. He was subsequently sentenced to a term of thirty (30) years on each count, to be served concurrently.

Five issues are presented for our review in this direct appeal:

1. denial of Defendant's Motion for Acquittal based on insufficient evidence to sustain the conspiracy charge;

2. failure of the court to make specific findings regarding the standard of proof necessary for the admission of statements of co-conspirators;

3. denial of Defendant's Motion for Severance;

4. error in the giving of certain instructions; and

5. sufficiency of the evidence to sustain conviction for dealing in a narcotic drug.

The facts tend to show that on August 20, 1983, confidential informant Russell Singleton, a resident of Arizona, met co-defendant Melvin Freeman during negotiations for the purchase of cocaine in Chicago. During the fall of 1983, Freeman and Singleton discussed arrangements for the purchase of a large quantity of marijuana in exchange for cocaine. Singleton informed Special Agent Fred Moore of the Federal Drug Enforcement Administration of these negotiations.

On January 7, 1984, Singleton arrived in Indianapolis and telephoned Freeman. While at a restaurant during the evening of January 7, Freeman and Singleton made final plans for the drug deal. Freeman offered Singleton two kilograms of cocaine worth approximately one hundred thousand dollars ($100,000) in exchange for one thousand (1000) pounds of marijuana. Freeman hoped to implement this exchange on a monthly basis. Singleton informed Freeman a third party from the west coast would arrive with money for the purchase of the cocaine. The third party was actually Special Agent Fred Moore. Freeman agreed to make a small down payment for the marijuana and pay the balance after thirty days.

On January 17, 1984, Singleton telephoned Freeman to confirm the deal. Singleton arrived at the Indianapolis Quality Inn Motel on the following day and telephoned Freeman. Singleton met with Freeman during the early morning hours of January 19 and Freeman advised Singleton he planned to send his son to Chicago to receive the marijuana. Freeman also stated the cocaine was of high quality. In the afternoon of January 19, Freeman unexpectedly arrived at Singleton's hotel room to request the marijuana be delivered to southern Indiana instead of Chicago. During the evening of January 19, Singleton met Freeman and Defendant Hopper at a bar in the Quality Inn and Hopper advised Singleton he was "running the show" and that he could easily distribute the marijuana. Hopper also requested the marijuana be delivered to southern Indiana instead of Chicago as Hopper had access to a barn in southern Indiana where the marijuana could be safely delivered and stored. Contrary to Freeman's earlier proposal, upon delivery of the marijuana, Hopper would give Singleton one kilogram of cocaine and forty thousand dollars ($40,000) as partial payment for the marijuana.

Later, Moore joined the trio at the bar and stated he had money to purchase the cocaine. As future transactions were being discussed, Freeman stated he had access to a large supply of cocaine with a guaranteed purity of 85%. When Freeman and Moore left the bar, Hopper told Singleton that Freeman was irresponsible. Singleton was advised to deal with Hopper in any future transactions and Hopper, by

means of a map, gave Singleton directions on where to deliver the marijuana.

Freeman and Moore then entered Singleton's room where Freeman counted the money for the purchase of cocaine and advised Moore he did not wish to deliver the cocaine to the Quality Inn as previously planned. He proposed that Moore accompany him and Hopper to the Rodeway Inn where Moore could inspect the cocaine. Freeman, Moore, and Hopper left the Quality Inn and drove to the Rodeway Inn where Hopper had a room. Hopper retrieved his possessions from the room, gave the room key to Moore and told Moore he could use the room to view the cocaine. Freeman and Hopper left the hotel, followed by police. Freeman later returned with one (1) kilogram of cocaine. Moore paid Freeman fifty thousand dollars ($50,000) for it. Freeman and Hopper were subsequently arrested at the Days Inn. A forensic chemist analyzed the cocaine and found it to be 92% pure.

## I

■ At the close of all the evidence Hopper moved for acquittal on the conspiracy charge, claiming there was insufficient evidence to support it. The requisite elements of a criminal conspiracy are intent to commit a felony, an agreement with another person to commit the felony, and an overt act in furtherance of that agreement. IC 35–41–5–2 (Burns Repl.1985); *Perkins v. State* (1985), Ind., 483 N.E.2d 1379, 1385. The gravamen of the offense of conspiracy is the agreement between the co-conspirators. *Perkins,* 483 N.E.2d at 1386. Conspiracy involves an intelligent and deliberate agreement between the parties; however, the State is not required to present direct evidence of a formal express agreement. *Perkins, supra; Survance v. State* (1984), Ind., 465 N.E.2d 1076, 1080. The agreement may be proved by circumstantial evidence alone, including the overt acts of the parties in pursuance of the criminal act. Likewise, intent may be inferred from the acts committed and the surrounding circumstances. *Perkins, supra; Survance, supra.*

On appeal from a ruling on a motion for judgment on the evidence, the court on review considers only the evidence most favorable to the non-moving party as well as reasonable inferences to be drawn therefrom. Judgment on the evidence is improper if there is any probative evidence or reasonable inferences to be drawn from the evidence or if reasonable persons would differ as to the result. In order to properly grant such a motion, there must be no substantial evidence or reasonable inferences to support the claim. *Carter v. State* (1984), Ind., 471 N.E.2d 1111, 1114–15. Thus, the State need present only a *prima facie* case in order to avoid a judgment on the evidence. *Jackson v. State* (1983), Ind., 446 N.E.2d 344, 346.

Here the trial court found the State did, in fact, present a *prima facie* case and denied the motion. Based on the above stated facts, the court did not err.

## II

Appellant claims the trial court erred by permitting into evidence statements of co-conspirator Freeman at a time when the State had not yet proven there was a conspiracy. He further claims the trial court erred by failing to grant a mistrial at the close of the prosecution's case when the trial court made no findings in connection with the standard of proof necessary to admit co-conspirator declarations.

We note that Hopper did not raise this issue in his belated motion to correct error. Issues raised in an appellate brief which were not set forth in a motion to correct error are not properly presented to this Court. Ind.R.App.P. 8.3(A)(7); *Jones v. State* (1987), Ind.App., 512 N.E.2d 211, 214. Accordingly, Hopper presents nothing for review as this issue has been waived.

## III

■ Hopper claims the trial court erred by not granting severance from his joint trial with co-defendant Melvin Freeman. Freeman was at liberty on bond and did not appear for trial. Following proper showing by the State, the court permitted the trial to proceed in Freeman's absence. Hopper

argues the trial court erred by denying the motion for severance since the "overwhelming quantum of evidence against the absent co-defendant necessarily caused spillover prejudice." Hopper's motion was based on IC 35–34–1–11(b), which provides that a court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant. It is within the discretion of the trial court to make this determination. On review, consideration is given to events which actually occurred at trial and not allegations in the motion for severance. *Parr v. State* (1987), Ind., 504 N.E.2d 1014, 1017. In *Blacknell v. State* (1987), Ind., 502 N.E.2d 899, 905, this Court held there is no constitutional right to be protected from damaging evidence. Such protection would result in separate trials, as a matter of right, for all cases involving co-defendants. The fact that one defendant implicates another does not entitle the latter to a separate trial.

In the instant case, Freeman was involved in the drug deals earlier in time than was Hopper. It was revealed in January that Hopper was working with Freeman to complete the transaction involved here and arrange for similar future transactions. The fact that Freeman was involved to a larger extent than Hopper does not prejudice Hopper where his involvement and actions are clearly stated by the evidence. Hopper does not claim this did not happen. The trial court gave preliminary instructions to the jury informing them they were not to infer anything from Melvin Freeman's absence and further told them they were to give separate consideration to each defendant. The court continued:

> Each is entitled to have his case decided on the evidence and the law which is applicable to him. Any evidence which is limited to one defendant should not be considered by you as to any other defendant.

Hopper makes no showing of prejudice as a result of the trial court's discretionary denial of severance meriting reversal. *Fai-*

*son v. State* (1981), Ind., 428 N.E.2d 784; *Henry v. State* (1978), 269 Ind. 1, 10–11, 379 N.E.2d 132, 137–38.

## IV

Hopper claims the trial court erred by giving a number of instructions on conspiracy and aiding and abetting, claiming said instructions were intermingled and confusing. Hopper did not object to the challenged final instructions nor did he offer instructions of his own on this subject. *See, e.g., Baker v. State* (1987), Ind., 505 N.E.2d 49, 51 (issue not preserved for appeal when no objection to instruction made at trial); *Laird v. State* (1985), Ind., 483 N.E.2d 68, 71 (waiver by failing to provide alternate instruction). Moreover, Hopper failed to include this issue in his belated motion to correct error and has accordingly waived it. Ind.R.App.P. 8.3(A)(7); *Jones,* 512 N.E.2d at 214.

## V

▇ Finally, Hopper claims the evidence is insufficient to sustain his conviction for dealing in cocaine. In reviewing sufficiency, this court will neither reweigh the evidence nor judge the credibility of witnesses. We will consider only the probative evidence and reasonable inferences therefrom which support the verdict to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Wallace v. State* (1986), Ind., 498 N.E.2d 961, 963.

The facts set forth above demonstrate Hopper's complicity with Freeman in the drug transaction which forms the basis of the underlying charges. Furthermore, a person is liable for a criminal act if he knowingly or intentionally aids, induces, or causes another person to commit an offense. Any evidence that the accomplice acted in concert with other persons who actually committed the acts constituting the elements of the crime is sufficient to support a conviction on the accessory theory. IC 35–41–2–4; *Chinn v. State* (1987), Ind., 511 N.E.2d 1000, 1003; *Wallace,* 498 N.E.2d at 963–64. There was sufficient probative evidence presented to the jury

here to justify a verdict of guilty beyond a reasonable doubt.

The trial court is affirmed.

SHEPARD, C.J., and Givan, and Dickson, JJ., concur.

DeBRULER, J., votes to affirm conviction for dealing and to reverse conviction for conspiracy for insufficient evidence.