132 F.3d 36
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Timothy HOPPER, Petitioner-Appellant,
v.
Charles B. MILLER, Superintendent, Respondent-Appellee.
 No. 95-3945.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 30, 1997.
Decided Dec. 16, 1997.[1]
 
 Appeal from the United States District Court of the Southern District of Indiana, Indianapolis Division, No. IR-94-1375-C-H/G; David F. Hamilton, Judge.
 Before RIPPLE, ROVNER and EVANS, Circuit Judges.
 
 ORDER
 I. Background
 
 1
 In 1985, an Indiana jury found petitioner Timothy Hopper guilty of dealing cocaine (Ind.Code § 35-48-4-1(2)) and conspiracy to deal cocaine (Ind.Code § 35-41-5-2). He was sentenced to two 30-year concurrent prison sentences The Indiana Supreme Court affirmed the conviction, Hopper v. State, 539 N.E.2d 944 (Ind.1989) (Hopper I ) Hopper was unsuccessful in seeking post-conviction relief in the Indiana trial court. and the Indiana Appellate Court affirmed the denial of post-conviction relief Hopper v. State, No. 49A04-9201-PC-26 (Ind App.Ct. Nov. 26,1992) (Hopper II ) (unpublished decision).
 
 
 2
 Hopper filed a pro se habeas corpus petition pursuant to 28 U.S.C. § 2254, it is his first federal collateral challenge. The district court denied the petition and dismissed the action with prejudice, and Hopper appeals.
 
 Hapeas Corpus Standard
 
 3
 Under the holding in Lindh v. Murphy, 117 S.Ct. 2059, 2063 (1997), the amendments enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) do not apply to Hopper's case, because the petition was filed on September 28, 1994, and therefore was pending at the time the new law was enacted. The court will refer to the pre-AEDPA habeas corpus standards.
 
 II. Insufficient Evidence of Guilt
 
 4
 Hopper argues that the government failed to prove him guilty beyond a reasonable doubt.
 
 
 5
 In the direct criminal appeal, the Indiana Supreme Court found that the evidence was sufficient to prove that Hopper had been dealing cocaine Hopper I, 539 N.E.2d at 946. The court added that the "facts set forth above demonstrate Hopper's complicity with Freeman in the drug transaction which forms the basis of the underlying charges." and that Hopper was liable under an accomplice theory. Hopper I, 539 N.E.2d at 947 The court concluded: "There was sufficient probative evidence presented to the jury here to justify a verdict of guilty beyond a reasonable doubt." Id., 539 N.E.2d at 947-48.
 
 
 6
 Under the pre-AEDPA standards, a federal habeas corpus court must view the evidence in a light most favorable to the prosecution, and determine whether any rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The Indiana Supreme Court's factual findings receive a presumption of correctness. 28 U.S.C. § 2254(d) (1995).
 
 
 7
 In its recitation of the facts. the Indiana Supreme Court stated that a confidential informant, Russell Singleton, met codefendant Melvin Freeman in Fall 1983 and began discussing the "purchase of a large quantity of marijuana in exchange for cocaine." 539 N.E.2d at 945. On January 7, 1984, Singleton and Freeman met and made final plans for the drug deal. "Freeman offered Singleton two kilograms of cocaine worth approximately one hundred thousand dollars ($100,000) in exchange for one thousand (1,000) pounds of marijuana" Id. "Freeman agreed to make a small down payment for the marijuana and pay the balance after thirty days." Id.
 
 
 8
 On January 19, 1984, Singleton met with Freeman in the morning and agreed that Freeman would send his son to Chicago to pick up the marijuana. Id. That afternoon, Freeman informed Singleton that instead of their original plan, he would prefer that the marijuana be delivered in Indiana instead of Chicago. Id. That evening, both the informant and the undercover agent first became aware that Hopper was involved, when Singleton met Freeman and Hopper at the Quality Inn.
 
 
 9
 Hopper advised Singleton he was now "running the show" and that he could easily distribute the marijuana. Hopper also requested the marijuana be delivered to southern Indiana instead of Chicago as Hopper had access to a barn in southern Indiana where the marijuana could be safely delivered and stored. Contrary to Freeman's earlier proposal, upon delivery of the marijuana, Hopper would give Singleton one kilogram of cocaine and forty thousand dollars ($40,000) as partial payment for the marijuana.
 
 
 10
 Hopper I, 539 N.E.2d at 945. Later, undercover Special Agent Fred Moore met Hopper, Freeman, and Singleton at the Quality Inn bar.
 
 
 11
 When Freeman and Moore left the bar, Hopper told Singleton that Freeman was irresponsible. Singleton was advised [by Hopper] to deal with Hopper in any future transactions and Hopper. by means of a map, gave Singleton directions on where to deliver the marijuana.
 
 
 12
 Freeman and Moore then entered Singleton's room where Freeman counted the money for the purchase of cocaine and advised Moore he did not wish to deliver the cocaine to the Quality Inn as previously planned He proposed that Moore accompany him and Hopper to the Rodeway Inn where Moore could inspect the cocaine. Freeman, Moore, and Hopper left the Quality Inn and drove to the Rodeway Inn where Hopper had a room Hopper retrieved his possessions from the room, gave the room key to Moore and told Moore he could use the room to view the cocaine. Freeman and Hopper left the hotel, followed by police. Freeman later returned with one (1) kilogram of cocaine Moore paid Freeman fifty thousand dollars ($50,000) for it. Freeman and Hopper were subsequently arrested at the Days Inn
 
 
 13
 Hopper I, 539 N.E.2d at 945-46.
 
 
 14
 The federal district court found that the evidence at trial was not only sufficient, it was "devastating as regards Hopper's guilt of the two charges." The district court thoroughly detailed why the evidence was more than sufficient to find Hopper guilty beyond a reasonable doubt.
 
 
 15
 Although Hopper concedes that a conspiracy existed, he argues that the conversations between Freeman and Singleton "had nothing to do with Hopper, nor was Hopper ever mentioned. Hopper argues that the "jury apparently found [him] guilty solely because [he] was present." Hopper argues further:
 
 
 16
 Hopper's involvement was more as an onlooker in the vicinity of the transaction, or more appropriately one whose guilt is merely proved by association on the day of the sale, the only day where Hopper is even a named player in the action. It was clear that Singleton did not know anyone else was aware of the deal until late in the day of the sale
 
 
 17
 It matters little, if at all, that the undercover agent was unaware of Hopper's existence or role in the conspiracy prior to the day the cocaine transaction took place. Hopper argues there was only "the brief appearance and association of Hopper at the very end of the long drawn out conspiracy [which had been] engineered by the confidential informant, Russell Singleton." However, even if Hopper had joined the conspiracy only on the day of the sale, he could still be found to be a member of the conspiracy.
 
 
 18
 Moreover, in contrast to Hopper's arguments, he was far from a passive "onlooker" who happened to be in "the vicinity." Hopper's conduct once he came on the scene demonstrated that he was intimately involved in the conspiracy which led to the transaction taking place on January 19, 1984. For example, Freeman told Singleton that "the man who had the cocaine" would be present at dinner that night to discuss details. Hopper arrived that night, and told Singleton that Hopper himself would now be "running the show." Hopper explained the terms, and in fact materially altered the terms of Freeman's earlier arrangement with Singleton. Hopper accompanied Freeman and Moore to the Rodeway Inn for an inspection of the cocaine, Hopper took his possessions from the hotel room at the Rodeway Inn, gave a key to Moore, and instructed Moore to use Hopper's room to view the cocaine. Hopper and Freeman drove to another motel, and shortly thereafter Freeman returned to the Rodeway Inn with the kilogram of cocaine. This evidence overwhelmingly puts Hopper in the middle of the conspiracy to deal cocaine, and a considerable distance from a mere onlooker.
 
 
 19
 Hopper also argues that when he told Moore that Freeman was irresponsible and that Moore should hereafter deal with Hopper, he was referring to the future, and thus the statement did not imply that Hopper was currently involved in the conspiracy. However, the law clearly permits the consideration of references to the future, or even acts committed after the crime, as proof of a defendant's membership in the conspiracy leading to the crime charged.
 
 
 20
 Hopper next disputes that his providing a map the delivery of the marijuana cannot be used to show he was part of the conspiracy. First, Hopper argues that in relation to the map, he "did not utter one word which could be used" to support a conviction. Second, Hopper argues that the map concerned the delivery of marijuana, and the crime he was charged with concerned cocaine: "There is no evidence that Hopper aided or abetted Freeman in anything to do with cocaine, it is apparent that this [aiding and abetting] instruction clearly confused the jury." Both arguments fall. The cocaine deal for which Hopper was convicted cannot be separated from the marijuana delivery, since the marijuana (plus some cash) was being traded for the cocaine.
 
 
 21
 Hopper also argues that the DEA agent was permitted to testify as to Freeman's statements "without any personal knowledge of that fact [Hopper's connection to the conspiracy] on the witness's part." Even if the court were applying Fed.R.Evid. 801, which is the same as the Indiana Rule of Evidence 801, the personal knowledge requirement of Fed.R.Evid. 602 does not apply to the admission of coconspirator statements under Fed.R.Evid. 801(d)(2)(E). United States v. Lindemann, 85 F.3d 1232, 1237-38 (7th Cir.1996).
 
 
 22
 We conclude that, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt.
 
 III. Ineffective Assistance of Trial Counsel
 
 23
 Hopper argues that trial counsel was ineffective because he (1) failed to object to the aiding and betting instructions and failed to tender proper instructions in their place; and (2) failed to object to the admission of the coconspirator's statements.
 
 
 24
 This question was not raised in the direct criminal appeal before the Indiana Supreme Court, although different counsel represented Hopper on appeal. In the post-conviction proceeding, the Court of Appeals of Indiana rejected the claim.
 
 
 25
 Under Strickland v. Washington, 466 U.S. 668 (1984), Hopper may establish ineffective assistance of counsel by showing that the attorney committed serious errors that fall below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id., 466 U.S. at 687.88
 
 
 26
 A. Improper Jury Instructions on Aiding & Abetting
 
 
 27
 Hopper argues that his trial counsel was ineffective because he did not object to the jury instructions regarding aiding and abetting (instruction nos. 13 & 14), and conspiracy (nos. 10 & 11). He maintains that the jury instructions were worded such that the jury could have concluded that he was guilty of conspiracy based on his "mere presence" at the scene of the drug transaction on January 19, 1984. "Hopper's bad timing, associating with a drug dealer, and maybe 'looking' like one himself created nothing more than a suspicion and does not show" that he was part of the conspiracy. (Appellant's Brief, p. 26.) Hopper adds: "It is difficult to ascertain from the reading of final instructions 10, 11, 13, and 14, just what had to be proven in order to prove whether Hopper conspired and aided and abetted." (Appellant's Brief p. 25; emphasis in original.)
 
 
 28
 The Indiana Supreme Court held in the direct criminal appeal that the issue had been waived because no objection was made at trial, Hopper did not proffer his own jury instructions, and he did not include the issue in the belated motion to correct errors. Hopper I, 539 N.E.2d at 947. Thus, the court did not reach the merits of this claim
 
 
 29
 In the post-conviction proceeding. the Court of Appeals of Indiana held that the issue of "improper jury instruction [and] failure to object to instruction" were issues "known to Hopper either at the time of his trial or appeal, and therefore it would not review the issues. Hopper II, at p. 3. The court went on to state, however, that "Hopper framed his post-conviction claims in terms of violations of his constitutional rights." including ineffective assistance of trial and appellate counsel. Nevertheless, the court found no "fundamental error," see Wilson v. State, 514 N.E.2d 282, 284 (Ind.1987), in regard to the ineffective assistance claims. "Hopper has not demonstrated either fundamental error or that there is a reasonable probability that appellate counsel's choices altered the outcome of his case." Hopper II, at p. 6. The respondent, instead of arguing waiver or default, argues that the instructions accurately state the law of Indiana, so counsel's performance was not deficient. Thus, the respondent has waived the waiver argument, and the court can reach the merits of the claim. Gomez v. Acevedo, 106 F.3d 192, 196 & n. 4 (7th Cir.1997); Blackwell v. Franzen, 688 F.2d 496, 502 (7th Cir.1982).
 
 
 30
 In the habeas proceeding, the federal district court found that the instructions given "were an adequate statement of Indiana law," and contrary to Hopper's belief, "did not instruct the jury that Hopper could be convicted merely because of his presence at the scene of the sale."
 
 
 31
 Under Indiana law, guilt as an accomplice requires more than merely being present at the scene of the crime. Ind.Code § 35-41-2-4, Conrad v. State, 369 N.E.2d 1090, 1092 (Ind.Ct.App.1977). The jury instructions to which Hopper now objects state:
 
 
 32
 Instruction No. 10. The intent to commit the crime of conspiracy may be inferred from the acts committed and circumstances surrounding the case.
 
 
 33
 Instruction No. 11. An agreement may be implied from the conduct of the parties although they acted separately or by different means and did not come together or enter into an express agreement
 
 
 34
 Instruction No. 13. The presence of a person at the scene of the commission of the crime and companionship with another person engaged in the commission of the crime and a course of conduct before and after the offense are circumstances which may be considered in determining whether such a person aided and abetted the commission of such crime. If, in the commission of a crime it is shown by the evidence beyond a reasonable doubt that the persons present acted in union, any act of one person is attributable to all persons and a person is responsible for the acts of his companions as well as his own. Under these circumstances it is not essential that actual participation of each of the defendants in each element of the crime charged be established
 
 
 35
 Instruction No. 14. Aiding, inducing or causing an offense: A person who knowingly or intentionally aids, induces. or causes another person to commit an offense commits that offense, even if the other person (1) has not been prosecuted for the offense; (2) has not been convicted of the offense; or (3) has been acquitted of the offense. (Emphasis added.)
 
 
 36
 The instructions are accurate insofar as Indiana law provides that an accomplice's presence at the scene of a crime "may be considered," but is not determinative for purposes of an inquiry into aiding and abetting. See Edgecomb v. State, 673 N.E.2d 1185, 1193 (Ind.1996); Martin v. State, 457 N.E.2d 1085, 1087-88 (Ind.1984). See also United States v. James, 40 F.3d 850, 865 (7th Cir.1994); United States v. Burrell, 963 F.2d 976, 988 (7th Cir.1992).
 
 
 37
 In regard to jury instruction No. 11, stating that no express agreement is necessary between coconspirators, the Indiana Supreme Court in Frias v. State, 547 N.E.2d 809, 812-13 (Ind.1989), held that this language was an improper instruction because the "instruction could be understood to say that the jury could find there was an agreement even though the evidence showed they never came together and never entered into an express agreement," and could "find the agreement existed even though there were no facts presented in evidence from which to imply its existence circumstantially." We note that neither the parties nor the district court discuss Frias v. State, 547 N.E.2d 809, 812-13 (Ind.1989). In viewing the jury instructions as a whole, see Estelle v. McGuire, 502 U.S. 62, 72 (1991), we find any error to be harmless. See California v. Roy, 117 S.Ct. 337, 338-39 (1996) (per curiam ); Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). Taken as a whole, there is a reasonable likelihood that the jury understood that in order to find Hopper guilty as an accomplice, it was necessary to find more than mere presence at the scene of the crime; that an express agreement between Hopper and the others was not necessary; that Hopper's intent to commit the crime of conspiracy could instead be inferred from the acts he actually committed and the surrounding circumstances, and that the jury was required to find evidence beyond a reasonable doubt that Hopper and the codefendants acted in union, even absent an express agreement.
 
 B. Coconspirator's Statements
 
 38
 Hopper argues that his trial counsel was ineffective because he failed to keep out of evidence the statements of Melvin Freeman. a codefendant tried in absentia. (Freeman had been at liberty on bond and did not appear for trial, consequently, the trial court permitted the trial to proceed in his absence, denying Hopper's motion for a severance. Hopper, 539 N.E.2d at 946-47.) Assuming the issue had been procedurally defaulted, Hopper appears to argue that cause for failure to raise the issue in the post-trial motion to correct errors was ineffective assistance of one of his attorneys. See Coleman Thompson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72 (1977).
 
 
 39
 The Indiana rule requiring a motion to correct errors as a prerequisite to a direct criminal appeal is not necessarily characterized as a post-conviction collateral attack. Instead, the motion is a prerequisite to the direct criminal appeal In Indiana, the defendant must file a motion to correct error (or a petition to file a belated motion, as Hopper did), and include in it all errors that he wants to preserve for appeal Ind. Crim Rules 16, 19. Thus, it is not entirely clear whether the Indiana courts classify a belated motion to correct error as a petition for post-conviction relief for which there would be no right to effective assistance of counsel. Compare Smith v. State, 559 N.E.2d 338, 343 (Ind.Ct.App.1990) with Stewart v. State, 567 N.E.2d 171, 173 n. 1 (Ind.Ct.App.1991)." Mears v. Hanks, No. 96-1959 (7th Cir. May 15, 1997), 1997 WL 267848. But cf. Tredway v. Farley, 35 F.3d 288,295 (7th Cir.1994).
 
 
 40
 We conclude, however, that even if Hopper had the right to counsel to file the motion to correct errors, counsel was not ineffective in not raising the issue in the motion to correct errors, because the coconspirator's statements were properly admitted, as discussed below.
 
 
 41
 What may seem to be only a state court evidentiary ruling[2] can be legitimately recast as a constitutional issue in the context of ineffective assistance of counsel claim. See Mason v. Hanks, 97 F.3d 887, 894 (7th Cir.1996) (while admission of hearsay presents a question of state law, in the habeas proceeding the "constitutional right at stake ... is the right to the effective assistance of counsel on appeal, and in that context we may consider the state, as well as the federal issue that the petitioner's counsel did not pursue"); Stewart v. Duckworth, 93 F.3d 262, 268 (7th Cir.1996) (state law issue is not a proper ground for federal habeas relief, but "failure to raise a patently meritorious state law issue can, of itself, constitute ineffective assistance of counsel").
 
 
 42
 The issue can also be presented on due process grounds, that the trial was fundamentally unfair, and (as Hopper clearly argues) as a Confrontation Clause claim. See, e.g., Bourjaily v. United States, 483 U.S. 171 (1987) (coconspirator exception); Idaho v. Wright, 497 U.S. 805, 814-15 (1990) (hearsay testimony and Confrontation Clause). However, even if we were to find that Hopper has not procedurally defaulted this claim, the claim fails on the merits.
 
 
 43
 C. Coconspirator's Statements & Sequence of Conspiracy Findings
 
 
 44
 Hopper argues that the government "failed to initially prove the existence of the conspiracy," and that the statements "came in prior to the necessary proof that a conspiracy to sell cocaine existed." Hopper's quarrel with the rules of proof in a conspiracy case is that a determination must be made as the "the quantum of proof or regarding the standard of proof which the prosecution must meet in connection with the co-conspiratorial statements."
 
 
 45
 The procedural sequence of linking a defendant to an existing conspiracy before permitting the admission of coconspirator's statements is not constitutionally mandated. See United States v. Garver, 809 F.2d 1291 (7th Cir1987); United States v. Santiago, 582 F.2d 1128 (7th Cir.1978). Indeed, failure to make Santiago findings prior to admission of coconspirator's statements at trial is not necessarily reversible error, so long as the evidence in the trial record supports the findings United States v. Stephenson, 53 F.3d 836, 842-44 (7th Cir.1995). See also United States v. Rodriguez, 975 F.2d 404, 409-10 (7th Cir.1992) (discussing several different methods in which trial court can determined whether coconspirator statements are admissible, with or without a preliminary determination); United States v. Cox, 923 F.2d 519, 526 (7th Cir.1991) (same). Cf. United States v. DiDomenico, 78 F.3d 294 (7th Cir1996); United States v. Martinez De Ortiz, 907 F.2d 629 (7th Cir.1990) (en banc ).
 
 
 46
 In any event, the inculpatory statements admitted into evidence in Hopper's trial were made in furtherance of the conspiracy, and thus no prejudice resulted from admitting the statements, and no constitutional error occurred.
 
 
 47
 D. Coconspirator's Statements & Confrontation Clause
 
 
 48
 Hopper also raises a Confrontation Clause argument, an argument which the Court of Appeals of Indiana, in reviewing the post-conviction petition, found had been waived for failure to raise in the direct appeal. Even on the merits, however. the argument would fail. Hopper argues that the Indiana Constitution "was violated because Hopper could not meet Freeman 'face to face.' " The Confrontation Clause "is not violated if the hearsay statement "falls within a firmly rooted hearsay exception." Idaho v. Wright, 497 U.S. 805, 814 (1990). Statements by a coconspirator made during the course of and in furtherance of the conspiracy is a "firmly rooted hearsay exception." Bourjaily, 483 U.S. at 183 Hopper has failed to show that a violation of the Confrontation Clause occurred
 
 
 49
 IV. Ineffective Assistance of Appellate Counsel
 
 
 50
 Hopper argues that his appellate counsel was ineffective because he failed to challenge the admission of the codefendant's statements at trial. Having found that no constitutional error occurred in admitting this testimony at trial, we conclude that appellate counsel could not have been ineffective for failure to raise a losing claim in the direct criminal appeal.
 
 
 51
 Hopper argues that his appellate counsel was ineffective because he failed to argue that trial counsel had been ineffective We need not explore this claim further, given our finding that trial counsel was not ineffective
 
 V. Conclusion
 
 52
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, accordingly, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a), Cir. R. 34(f)
 
 
 [2]
 Under Indiana law, a coconspirator's statement can be admitted as nonhearsay under certain circumstances. Ind. Rules of Evid. 801(d)(2)(E)